TERWILLIGER v. LONG ISLAND R. CO.

(Supreme Court, Appellate Division, Second Department. July 25, 1912.)

1. RAILROADS (§ 350*)—CROSSING ACCIDENTS — CONTRIBUTORY NEGLIGENCE — EVIDENCE.

Where the evidence showed that deceased was riding in a friend's automobile when struck by a train and killed, that he was talking with the person on the seat behind him, that the country was open and level and it was broad daylight, and there was no evidence that the friend who was driving was not a reasonably prudent man, competent to drive the car, or that deceased had any reason to suppose that he was not a careful man, there was sufficient evidence that deceased was free from contributory negligence to make the question one for the jury rather than one of law, even if deceased was familiar with the country, and did not exercise active vigilance to guard against danger.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. § 350.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. NEGLIGENCE (§ 93*)—IMPUTING NEGLIGENCE OF DRIVER TO OCCUPANT OF VEHICLE.

The negligence of the driver of an automobile is not imputable to a guest riding with him at his request.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 147–150; Dec. Dig. § 93.*]

3. APPEAL AND ERROR (§ 1050*)—REVIEW—HARMLESS ERROR.

In an action for the death of a person struck by a train, where the evidence on the question of contributory negligence warranted a judgment for plaintiff even if deceased was familiar with the locality, the admission of evidence tending to show that he did not know the locality was not prejudicial error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4153–4160, 4166; Dec. Dig. § 1050.*]

4. TRIAL (§ 91*)—MOTIONS TO STRIKE OUT—NECESSITY OF PREVIOUS OBJECTIONS.

Where incompetent evidence was received without objection and the court instructed the jury to disregard it, the denial of a motion to strike it out was not error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 242–244, 252; Dec. Dig. § 91.*]

5. RAILROADS (§ 347*)—CROSSING ACCIDENTS—EVIDENCE.

In an action against a railroad company for the death of a person in a crossing accident, where it was claimed that the whistle was not blown, the testimony of a witness that just before the collision she exclaimed, "Why don't they blow that whistle?" was competent.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1124–1137; Dec. Dig. § 347.*]

Thomas, J., dissents.

Appeal from Trial Term, Kings County.

Action by Sarah C. Terwilliger, as administratrix of William G. Terwilliger, against the Long Island Railroad Company. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Affirmed.

Argued before HIRSCHBERG, THOMAS, CARR, WOODWARD, and RICH, JJ.

Wm. C. Beecher, of New York City, for appellant.

Augustus Van Wyck, of New York City (Meier Steinbrink, of Brooklyn, on the brief), for respondent.

WOODWARD, J. [1] This is an action to recover damages for the death of plaintiff's husband, due to the alleged negligence of the defendant in the operation of one of its trains on the 3d day of October, 1909. It appears from the evidence that Dr. Terwilliger, plaintiff's intestate, was invited to accompany a Mr. Welsh in his automobile to Long Beach on the day in question, and that Dr. Terwilliger and Mr. Welsh were accompanied by a Mr. Rhoades, who occupied the "rumble" seat upon Mr. Welsh's roadster, and who was, at the time of the accident, leaning forward, talking to Dr. Terwilliger. Mr. Welsh owned the car and was driving the same, and there is no suggestion that Dr. Terwilliger had any authority or control over it or its driver. He was merely a guest of Mr. Welsh, and there is

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

nothing to overcome the presumption that Mr. Welsh was operating the car in a lawful manner, and that he was a reasonably prudent man, competent to drive the car. There is nothing in the record to show that Dr. Terwilliger had any reason to suppose that Mr. Welsh was not a careful man, or that he had any reason to exercise any other degree of care than that which is incumbent upon all men, and that is that reasonable care which a reasonably prudent man should or would have exercised under the same circumstances. He was a passenger—a guest—in a car operated by a friend, and, while he could not close his eyes to an obvious or well-known danger, he was not called upon to exercise any active viligance to guard against a danger which was not known to him or which was not likely to befall one situated as he was in this car. He had a right to assume that Mr. Welsh, his friend, would exercise reasonable care in the operation of his car; and unless he was aware of the railroad crossing, and had reason to apprehend that Mr. Welsh would run his car into a position of danger, the jury might properly find that he was in the exercise of that reasonable degree of care which an ordinarily prudent man would exercise under like circumstances, by merely sitting still in his seat and talking with a fellow passenger. That is probably what 75 per cent. of the persons who go out for a drive with their friends do under the circumstances. They have no power over the car, no authority over the driver; and while they would not be free to ride with a reckless driver, knowing the fact, and charge their misfortunes upon others, we do not think it can be said that there is a failure to produce evidence of a lack of contributory negligence where it appears, as it does here, that the plaintiff's intestate was sitting in his seat engaged in a conversation with a fellow passenger who was occupying the seat behind him, and who was leaning forward for the purpose of carrying on the conversation, leaving the driver free to manage the car. Of course, if the passenger was familiar with a known danger, if he was better informed of the circumstances than the driver, it might be his duty to watch and point out the danger, but here the car was being driven upon a flat land, in broad daylight, and at an angle with the railroad track, which had been crossed some distance back and which was to be crossed again at grade. It was an open country, and, assuming that the plaintiff's intestate was familiar with the country, which is the most favorable view for the defendant, it cannot be said as a matter of law that he was bound to anticipate that Mr. Welsh would drive upon the crossing without observing the situation and taking the necessary precautions. If there had been nothing to divert his attention, he might have been called upon to observe the situation in common with Mr. Welsh and to protest against taking any risks, but the evidence shows that he was engaged in talking with Mr. Rhoades, who was behind him, and he certainly was not called upon to be alert and active to see to it that Mr. Welsh did not drive upon a railroad track which was in his immediate view in the face of an oncoming train. True, the jury might have held that this was not that reasonable degree of care which the circumstances demanded, but we cannot say

as a matter of law that, taking the most favorable view of the evidence, the plaintiff's intestate was guilty of contributory negligence, nor can we say that there was not evidence in the facts and circumstances to justify a jury in saying that he was in the exercise of reasonable care.

[2] The negligence of Mr. Welsh, if it was negligence, is not to be imputed to plaintiff's intestate. The only question for the jury, assuming the negligence of the defendant, is whether the evidence shows the plaintiff's intestate to have been free from negligence contributing to the accident, and we think the circumstances disclosed justified the jury in finding in behalf of the plaintiff upon this question.

[3] This view of the case disposes practically of the principal objection urged upon this appeal, for if the evidence is sufficient to warrant a judgment in favor of the plaintiff, upon the theory that the plaintiff's intestate knew the locality, then the admission of evidence tending to show that he did not know the locality, which the jury was subsequently directed to disregard, could not be of such a prejudicial character as to justify the reversal of a judgment, assuming the ruling to have been erroneous in the first instance. x

[4] The evidence specially objected to was given by Mr. Rhoades. He was asked, "Was anything said about going to Long Beach between you?" He answered, "Yes, sir; Mr. Welsh said, 'Let us go down to Long Beach. I have never been down there before, and we might as well go down.' Dr. Terwilliger and myself both said, 'Yes; let's go down.'" Objection was made to this as being inadmissible and hearsay, and after some discussion, in which it appears from the record that it was assumed that the witness had testified that Dr. Terwilliger had said that he had never been to Long Beach although no such testimony had been given, the court announced that the answer would be retained in the record, and that defendant's counsel might ask for a proper direction to the jury. Counsel promised to make the request at the proper time, and then took an exception to the ruling. Subsequently the court distinctly called attention to this testimony, and directed the jury to disregard it. It is to be remembered that this testimony was in the case without objection, and, under such circumstances, it is not error for the court to refuse to strike it out. The remedy is by a request to the court to instruct the jury to disregard it. Marks v. King, 64 N. Y. 628; Cole v. Fall Brook Coal Co., 159 N. Y. 59, 65, 53 N. E. 670.

[5] It is also urged that the court erred in permitting Mrs. Wilson to testify that she saw the accident, and that she exclaimed, just at the moment of the approaching collision, "Why don't they blow that whistle? The people in that car don't see that train." The court subsequently struck out the declaration "The people in that car don't see that train," and permitted the remainder of the exclamation to remain; the defendant taking an exception. The issue to be determined was whether the defendant had given any warning on its approach to this crossing, and it was clearly competent for the plaintiff to prove that no whistle was blown, and this witness had testified that she heard no whistle, and the fact that she made an exclamation

at the very crisis of the transaction, referring to the fact that no whistle was blown, seems to us to be competent. It was a fact which showed that her attention was directed to the very matter in issue. It was not evidence of the fact that the whistle was not blown. It was merely a fact showing that the witness in testifying that she heard no whistle was testifying to a matter to which her attention was directed at the time, and is not more objectionable than any other statement of fact which would show that she was in a position, and in a frame of mind, to know whether the whistle was blown or not. If she had testified that she looked to see if there was escaping steam, indicating the blowing of the whistle, it would not have been objectionable. Indeed, this very question was asked and answered by this witness without objection, and we are persuaded that the question objected to was not less open to objection.

We think the charge of the court was as favorable to the defendant as could be justified by the facts in this case, and that there were no errors requiring a reversal of this judgment. It is true that the verdict is large, but it is true that the plaintiff's intestate was a doctor, who, at the age of 35 years, was earning $5,000 per year. A practice of that amount at 35 gives a fair promise of a larger and more lucrative practice during the active years of his life, and he had a considerable expectancy at that time. We think the verdict is not so far excessive as to warrant this court in reducing it, and that it should not be disturbed.

The judgment and order should be affirmed, with costs.

HIRSCHBERG, CARR, and RICH, JJ., concur. THOMAS, J., dissents.