OMMEN *v.* GRAND TRUNK WESTERN RAILWAY CO.

1. NEGLIGENCE — INFANTS — IMPUTED NEGLIGENCE — CONTRIBUTORY NEGLIGENCE.

In an action under the survival act for personal injuries resulting in the death of a minor 18 years of age, who was a passenger in an automobile struck by defendant's train, the negligence, if any, of the driver of the car, is not to be imputed to decedent.

2. SAME—INFANTS—CONTRIBUTORY NEGLIGENCE.

Where decedent had arrived at the age of discretion, considering his position in the car, his age, and the situation in which he found himself, whether he exercised that care and prudence which a reasonably prudent person should, under the circumstances, *held*, a question for the jury.

3. RAILROADS—CROSSING ACCIDENT—NEGLIGENCE—SPEED OF TRAIN —QUESTION FOR JURY.

In an action for the death of plaintiff's decedent, caused by a collision at a highway crossing between an automobile and defendant's train, where the crossing was within the village limits, was virtually in a railroad yard, there was a freight train engaged in switching, there were four sets of tracks, the depot was only 1,300 feet away, and it was upon one of the main traveled streets of the village, the speed of the train, upon the question of defendant's negligence, *held*, a question for the jury, although there was no village ordinance regulating the speed of trains.

4. APPEAL AND ERROR—STIPULATIONS.

In view of stipulation by counsel for defendant that an inadvertent reference by the court in his charge to a statute, under which plaintiff had claimed no rights, would not be taken advantage of, on appeal, the question will not be considered by this court.

5. NEW TRIAL—WEIGHT OF EVIDENCE.

Verdict for plaintiff *held*, not so contrary to the great weight of the evidence as to warrant setting it aside.

Error to Kalamazoo; Weimer, J.  Submitted Octo-

See notes in 8 L. R. A. (N. S.) 597; L. R. A. 1915A, 761.

ber 18, 1918.    (Docket No. 87.)    Decided December 27, 1918.

Case by Jill Ommen, administrator of the estate of Ludwig Ommen, deceased, against the Grand Trunk Western Railway Company for the negligent killing of plaintiff's decedent.    Judgment for plaintiff.    Defendant brings error.    Affirmed.

*Harrison Geer* (*William K. Williams,* of counsel), for appellant.

*Mason & Sharpe,* for appellee.

KUHN, J.    The families of John Ommen and of his neighbor, George Suntken, who lived on their farms near Colfax, in Illinois, left their homes on the morning of September 8, 1917, in two automobiles, an Overland and a Ford, for the purpose of motoring to Sunfield, Michigan, to pay a visit to the family of Jill Ommen, a brother of John Ommen.    The course of their travels led them through the village of Schoolcraft, in Kalamazoo county, in this State, which village they approached from the south along Grand or Main street, so called, shortly before 4 o'clock in the afternoon of Sunday, September 9th.    Grand street in Schoolcraft, which is a village of 800 inhabitants, is crossed by the tracks of the defendant railway company within the corporate limits, but at the very southerly portion thereof.    Two main tracks run in a southwesterly and northeasterly direction, the southerly track carrying eastbound traffic and the next northerly track, westbound.    These main tracks are crossed by a single main track of what was formerly a division of the Lake Shore & Michigan Southern Railway, now the New York Central Lines, and the intersection is at the southeasterly limit of the village, the crossing being at right angles.    Situated in the northeast

angle formed by this intersection is the signal or interlocking tower, from which are operated the derailing and signal devices with reference to safety at this railroad crossing or diamond. Defendant's depot and freight house combined is situated just north of the westbound main line and just west of the right of way of the Lake Shore. Four tracks cross Grand street, the two southerly being the main line above referred to, the third a "Y" used as an interchange track between the defendant company and the Lake Shore railway, and the northerly track is a stub switch which serves an elevator and a coal shed, which are located to the north of the tracks. South of the crossing, the land is used for farming purposes, with the exception of two or three lots south of the tracks and east of the crossing, upon which there are dwellings. There are houses some distance north of the crossing. As the automobiles approached the Grand street crossing, and when some 50 or 80 rods south thereof, the occupants observed a freight train moving slowly over the crossing in a westerly direction. As the machines came to the crossing, it was blocked by this freight switching on the so-called interchange track. The Overland car was driven by John Ommen, who was sitting on the left side of the forward seat. John Suntken sat at his right. Theda Ommen sat at the right of the rear seat, and next to her was Marie Suntken, then Edward Suntken, and on the left side of the rear seat, Ludwig Ommen. The remainder of their party was in the Ford car, which was following them. The Overland car stopped some 12 to 20 feet south of the eastbound main track, and the motor was shut off. Witnesses for the plaintiff, who were members of the party, testified that in their judgment the stop at the crossing was four or five minutes, and the crossing was then cut, and thereupon John Ommen started the engine of his car, which was equipped with

a self-starter, and attempted to pass over the crossing and was struck by the pilot of defendant's eastbound passenger train No. 8 just as the front part of the hood of the machine reached the southerly rail. The driver was instantly killed, Theda Ommen, the mother, was injured, and Ludwig so severely injured that he died the same evening at 9 o'clock. This action is brought by the administrator of the estate of Ludwig Ommen, deceased, seeking to recover damages under the survival act, so-called, for the personal injuries sustained by the decedent in the collision above detailed. The issues involved were submitted to the jury and resulted in a verdict for the plaintiff in the sum of $6,504.70.

The errors relied upon by counsel for defendant are thus stated in their brief:

"1. Refusal of the trial judge to charge the jury that decedent was guilty of contributory negligence.

"2. Refusal to charge the jury that there was no negligence in the speed of No. 8 as it approached Grand street.

"3. Refusal of the trial judge to give defendant's 4th and 5th requests to charge, and in instructing the jury that it was for them to say whether or not the bell and whistle were sounded in a reasonably prudent manner, if they should find that it was sounded not less than 40 rods from the crossing.

"4. In refusing to charge the jury that defendant was not guilty of any negligence and in refusing to grant a new trial on the ground that the verdict was against the great weight of the evidence."

Decedent at the time of the accident was a minor just past 18 years of age, so that the negligence, if any, of John Ommen, the driver of the car, is not under the law of this State to be imputed to the decedent. *Hampel* v. *Railroad Co.,* 138 Mich. 1 (110 Am. St. Rep. 275) ; *Donlin* v. *Railway,* 198 Mich. 327. But the court submitted to the jury, and we think properly so, the question whether or not the decedent, Lud-

wig Ommen, was guilty of contributory negligence himself, having arrived at the age of discretion; that is, whether or not, under all the circumstances of the case, considering his position in the car, his age, and the situation in which he found himself, he exercised that care and prudence which a reasonably prudent person under the circumstances should have exercised, the law placing upon him the duty to exercise ordinary care to avoid injury under the circumstances. The trial judge charged the jury as follows:

"Every person is supposed to use his senses, both of sight and hearing, in self protection whenever there may be reasonable cause to apprehend danger. He must do all that an ordinarily prudent man ought to do or might be expected to do in any given circumstances. Thus, a railroad track is, in itself, a warning of danger, and every person should stop, look and listen before attempting to cross. Failure to do this is held to be negligence in and of itself, as a matter of law. So strongly has this rule been enforced, that even where there is a view of the track only for a short distance, and the approach of the train could have been seen by stopping, looking, and listening before actually reaching the track, the traveler in the highway has been held guilty of contributory negligence, as a matter of law, when injured in such a case, unless he is misled by flagman, trainmen, or trains, or otherwise. As I have just said to you, a person approaching a railroad track, a railroad crossing, must stop, look, and listen,. and must use his senses of sight and hearing. If, however, his vision, his view, is obscured by smoke or steam, or both, after stopping and after endeavoring to use his sense of sight, and being unable to do so, he has a right, I say, to rely upon his sense of hearing, but his duty to use his sense of hearing is greater than if he had the full use of his sense of sight. In other words, a man is not absolutely barred from crossing a railroad track because he cannot see, because his vision may be obscured by steam or smoke or both, but, if his vision is obscured so he is unable to see, then his duty to use his other senses is greater, he must exercise

more care and more caution in the use of the sense, the use of which is available to him."

It seems to be undisputed that in the position that the car occupied when it was stopped and where it remained for four or five minutes, the view of the occupants of the car to the west and along the tracks of the defendant railway was unobstructed, under ordinary conditions, for a considerable distance and that they could have easily seen an approaching train at a sufficient distance to have readily avoided any accident. It is, however, plaintiff's claim that on the day in question, during all of the four or five minutes that the cars were standing waiting for the freight train to open the crossing, the view of the occupants of the car was continually obstructed by smoke from the freight engine and from a fire in a dump heap three rods west and a rod north of the crossing; that the atmosphere was dreary and foggy and that the smoke was carried by the wind in a southwesterly direction down and across the tracks. It is strenuously urged by counsel for the appellant that all this testimony with reference to the smoke is simply an afterthought, and that in view of the fact that at the inquest which was held the morning after the accident, where no mention was made by any of the witnesses called as to smoke obscuring their vision, it was strange that the matter was first called out upon the trial of this case. Eight witnesses were sworn sustaining the claim of the plaintiff to the effect that the smoke obstruction was there and continued for the period of four or five minutes at least, and among these witnesses were Emil Decker and Charles Decker, both of whom, as far as the record discloses, are disinterested witnesses, being strangers to the deceased and his family. They were walking down the track approaching the crossing from the west and were some distance west of the crossing when the passenger train

passed them.   They both testified to the presence of
the smudge and the smoke coming from the freight
engine and from the bonfire, which created a smudge
smoke, and that the smoke came down and spread out
close to the ground.   It was the further contention of
the plaintiff that after the freight train had opened the
crossing, a brakeman on the cars made a motion to-
ward them, as if inviting them to cross.   The credibil-
ity of all of these witnesses and the value to be placed
upon their testimony was for the jury to determine.
In view of all these circumstances and the situation
in which the occupants of the car found themselves
at the time of the accident, we cannot say that, as a
matter of law, plaintiff's decedent can be held to be
guilty of contributory negligence, but we think it was
clearly a question for the jury to determine.   We think
that the charge of the court to the jury submitted
this question with instructions as favorable to the de-
fendant as it was entitled to.   See *McDuffie* v. *Railway
Co.*, 98 Mich. 356; *Wilbur* v. *Railroad Co.*, 145 Mich.
350; *Welch* v. *Railroad Co.*, 147 Mich. 220; *Amanta*
v. *Railroad Co.*, 177 Mich. 280.

2. The learned trial judge charged, with reference
to the speed of the train, as follows:

"It is the theory and claim of the defendant, that
the defendant's employees upon the passenger train
were not guilty of any negligence; that they operated
the train at a proper and reasonable speed under the
particular circumstances; that the commerce of the
country demands rapid transit, and that the speed of
the passenger train was such as careful and prudent
men, engaged in railroading, would maintain under
just such circumstances.   Right here I want to say to
you, there does not seem to be any question about the
rule with reference to speed in the country, upon
purely country crossings.   There is practically no limit
to it, and the courts recognize it.   It is not negligence
for a railroad to operate through the open country,
over ordinary country crossings at a rate of forty,

fifty, or sixty miles an hour. All train schedules are planned and framed upon practically that basis, and the business and commerce of the country demands that sort of speed, the public recognizes it, and the courts hold in view of that the public must also recognize, when they approach a railroad crossing in the country at any point, that they may expect and should expect, at any time, a passenger train, or a freight, for that matter, to · be coming along at the rate of forty or fifty or sixty miles an hour, and they are all charged with notice of that.

"The same rule I do not understand to obtain in cities or villages or congested communities. When trains leave the open country and approach settled districts, then it becomes a question of what care and caution ordinarily prudent men would exercise under such circumstances. * * *

"Now it is for you to say what the character of this particular crossing was; if it was, to all intents and purposes an open country crossing, then you would not be at liberty to consider the question of the high rate of speed as an element of negligence. It is for you to say what its character was, what the surroundings were, what the conditions presented there were on the occasion in question; how much of a settlement there was there; how much traffic there was there; what do the facts show as to what the conditions were? You have heard the testimony; you must say what it is.

"Even at that crossing, or at any crossing, it would not follow that a speed of thirty-five or forty, or forty-five miles per hour would, in and of itself, be negligence, or be negligent. It would not, as a matter of law, standing by itself, constitute negligence. It is a question to be determined in view of the facts and circumstances surrounding it, and the conditions presented. It must be found in the light of those surrounding circumstances and conditions, and you must say whether or not, in the light of those circumstances and conditions, this train was operated not only with reference to speed, but with reference to signals, in a prudent manner, and in a manner that ordinarily prudent men would have operated it under the same circumstances, or in an imprudent manner, or a careless, reckless manner. * * *

"A high rate of speed is not, in itself, negligence. The question for your determination is whether or not those in charge of the passenger train on approaching the crossing, operated the train with reasonable and ordinary care. In determining this, you are at liberty to consider all the testimony as to the speed of the train and warning by bell and whistle, or lack thereof, and in fact, all other facts and circumstances that have any bearing upon it.

"In determining what would amount to reasonable and ordinary care in the operation of a passenger train on approaching a crossing, you may and should consider the conditions as they existed at the crossing so far as they were apparent to those operating the engine of the passenger train, or in so far as those conditions should have been apparent to those operating that engine had they been in the exercise of reasonable and ordinary care."

It is the contention of counsel for the appellant that the submission of the question of speed was error, because it is their claim that the crossing in question was, in effect, nothing more than an ordinary country railway crossing and that there were no special circumstances and conditions existing at this crossing that would bring it from without the rule that upon an ordinary country crossing there is no legal limitation upon the rate of speed at which a train might be operated. With this contention we cannot agree. We think that the situation here presented was vastly different from those which surround the ordinary open country crossing. The crossing was virtually in a railroad yard. There was a freight train engaged in switching operations. There were four sets of tracks across the street at the point of crossing. The depot was about 1,300 feet east and was in plain sight of the crossing, and the crossing was upon one of the main traveled streets of the village of Schoolcraft, about 20 rods south of the business section of the village and within the village limits. It is true that there was no village ordinance with reference to the speed

of trains operating across this crossing, but we do believe that the situation presented brings it within the rule which says that where there are special circumstances and conditions which should, and ordinarily would, induce an ordinarily prudent person to exercise greater caution, the question as to whether or not the train was operated with ordinary care and prudence with reference to speed is one for the jury. See *Guggenheim* v. *Railway Co.*, 66 Mich. 150; *Thayer* v. *Railroad Co.*, 93 Mich. 150; *Haines* v. *Railway Co.*, 129 Mich. 475; *Gorton* v. *Harmon,* 152 Mich. 473 (15 Ann. Cas. 461) ; *Folkmire* v. *Railways Co.,* 157 Mich. 159 (17 Ann. Cas. 979) ; *Littlewood* v. *Railway,* 189 Mich. 388; *Halloran* v. *Railway Co.,* 197 Mich. 308; *Coston* v. *Railroad Co.,* 201 Mich. 232; *Block* v. *Railroad Co.,* 202 Mich. 341. We think that the charge as given by the court was justified under the circumstances of the case.

3. Section 8302, 2 Comp. Laws 1915, reads as follows:

"A bell of at least thirty pounds weight and a steam whistle shall be placed on each locomotive engine, and said whistle shall be twice sharply sounded at least forty rods before the crossing is reached, and after the sounding of the whistle the bell shall be rung continuously until the crossing is passed, under a penalty of one hundred dollars for every neglect: *Provided,* That at street crossings within the limits of incorporated cities or villages, the sounding of the whistle may be omitted, unless required by the common council or board of trustees of such city or village; and the company shall also be liable for all damages which shall be sustained by any person by reason of such ·neglect."

These statutory requirements were first brought into the case by defendant's requests Nos. 4 and 5, and the court read a portion of the statute to the jury and explained its effect. In the certificate of the judge

annexed to the bill of exceptions is found the following:

"At the close of the charge and immediately after the jury had retired, counsel for the plaintiff called to the attention of the court, in the presence of counsel for the defendant, the fact that the plaintiff had at no time, throughout the trial or in argument insisted upon any rights under the statute to which the court referred in the charge and the further fact that this statute was first brought into the case by reference thereto made by counsel for the defendant in argument to the jury and in their request to charge. To this, counsel for the defendant agreed. It was then in open court stated by Mr. Geer, representing the defendant, that no advantage would be taken by the defendant, on appeal, of such reference to the statute as was made by the court in the charge to the jury, thereby avoiding as it appeared to the court, the necessity of recalling the jury for the purpose of further instructions in regard to the statute."

It was the contention of the plaintiff that because of the proviso in the statute, and it being conceded that the accident occurred within the limits of an incorporated village, the statute was inapplicable insofar as the failure to blow the whistle was concerned. There was testimony from witnesses that the bell was not ringing when it went over the crossing. In view of the concession made by counsel, according to the certificate of the judge, and in view of the positive testimony of witnesses that there was no bell ringing, we think that the question of the negligence of the defendant was properly submitted to the jury, and the inadvertent reference of the court in his charge to the statute should not at this time be taken advantage of.

4. A careful reading of this record has satisfied us that there was abundant evidence to warrant the submission of the question of the defendant's negligence to the jury and that the verdict was not so contrary to

the great weight of the evidence as to warrant our holding that the court erred in refusing to set the verdict aside on that ground.

We are of the opinion that the questions involved presented issues for the jury which were submitted to them with proper instructions as to the law applicable thereto.

Finding no error, we are constrained to affirm the judgment.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred.