BALTIMORE AND OHIO RAILROAD COMPANY *v.* FAUBION.

[No. 13,549. Filed February 19, 1930. Rehearing denied May 21, 1930. Transfer denied June 26, 1931.]

*McMullen & McMullen, Morrison R. Waite, William A. Eggers* and *Frank J. Goebel,* for appellant.

*Sam A. Connelley, James J. Connelley* and *Estal G. Bielby,* for appellee.

NEAL, P. J.—The facts of this case favorable to appellee are as follows: On June 11, 1926, and prior thereto, the appellant owned, maintained and operated a railroad in this state; the railroad ran through Holton, Ripley County, in an easterly and westerly direction; in the named town was a street called Falkner Street, which runs north and south and intersects the appellant's railroad at right angles; the right of way of appellant at the point of intersection with Falkner Street is 80 feet wide, and the railroad track is approximately in the center of the same; the approach from the south over the street to the railroad crossing is not level, the rise in the grade being two feet, commencing at a point 28

feet south of the south rail and continuing to the tracks; on the above-named day, the appellee, who was 16 years of age, was riding on the left side in the rear of a Ford automobile, which was being operated by her father, Enoch Faubion; appellee's mother was in the front seat to the right of the driver, and her grandmother occupied the rear seat on the appellee's right; the automobile approached the railroad crossing from the south; the view of the occupants of the automobile, including appellee, was obstructed both to the east and west as they moved forward toward the railroad crossing until the automobile reached a point in the highway 28 feet south of the south rail of appellant's tracks—to the east, by trees, outbuildings, fences and telegraph poles; to the west, by corn growing in the fields, a toolhouse and buildings; when the automobile was within 100 feet of the crossing, the father of appellee, who was driving, decreased the speed of the car and changed into low gear; appellee and all of the other occupants began to look for trains, listening and looking both ways, east and west; the speed of the automobile as it traveled toward the crossing was between six and seven miles per hour; when the front wheels of the automobile reached the south rail, the right wheel over the rail, the automobile was struck by a passenger train moving at a rate of speed of approximately 30 miles per hour; the automobile was demolished, all of the occupants of the car were thrown out, and the appellee, mother and grandmother severely injured.

Appellee said, in substance, on direct examination, describing her actions as she approached the crossing, that she looked west and then east and back and forth, and the rest of the people were looking too, and that all of them continued to look and listen until the train hit them. On cross-examination, she testified to the effect that she could see the railroad track to the west when she

was within 20 feet of the same; that, after the car passed all obstructions, she must have looked to the west; that she might have seen the train at any time when within 28 feet of the south rail, if she had looked to the east.

The passenger train, as it moved toward the crossing in question, did not sound the whistle distinctly three times when not less than 80 nor more than 100 rods from such crossing nor ring the bell continuously from the time of sounding such whistle until the engine reached the crossing; the train made no noise that was perceptible to appellee, her father, mother or grandmother as they approached the crossing, and the father of appellee was aware of the train only an instant before it struck the car.

The evidence discloses that a clear view for a considerable distance east and west on the railroad tracks was afforded the occupants of any automobile approaching the crossing from the south when within 28 feet of the south rail of appellant's tracks.

The appellant submitted 44 interrogatories to the jury, covering almost every phase of the evidence. The several answers of the jury to the interrogatories are supported by the evidence, and, for the purpose of this opinion, the questions and answers are summarized, which summary is to be considered as addendum to the facts as shown by the evidence already stated and for the further purpose to discuss the alleged error of the court in overruling appellant's motion for judgment on the interrogatories.

The accident happened about 4:30 p. m. The appellee's eyesight and hearing were good on June 11, 1926, the day of the accident; she had been over the crossing several times within the year preceding the accident. The train consisted of an engine, whose smoke stack was 11 feet from the rails, a baggage car and four coaches, and was about 400 feet in length. The railroad track was not level for over one mile east of the crossing, but

was straight and the track was not straight for a mile west of the crossing, but practically level. The distance between the two rails at the crossing was four feet eight inches. All of the obstructions to the view on the south side of track of one looking east from the center of the gravel road were off of appellant's right of way except the telegraph poles, which were 15 inches in diameter; the nearest building south from the center of the track at the crossing was 55 feet, and from the center of the gravel road to the nearest telegraph pole was 20 feet, and the second pole 170 feet. The rate of speed of the train as it approached the crossing was 30 miles per hour from a point 80 rods east of the crossing and that of the automobile was six or seven miles per hour from a point 28 feet south of the crossing. When the front end of the automobile was 28 feet from the south rail of the tracks, the front of the engine was 150 feet away, and when the front end of the automobile was 12 feet therefrom, the front end of the engine was 70 feet away. The entire train was in full view of appellee when the front end of the automobile was 12 feet from the track. There was no obstruction to the view of a person seated in an automobile looking eastwardly along the railroad track toward a train approaching the crossing over 2,000 feet away from a point 28 feet south of the south rail of the tracks. The appellee did not see nor hear the train before it struck the automobile, neither did she stop, look and listen at any time after she came to a point within 28 feet or less of the railroad tracks. The employees did not blow the whistle on the engine at a distance of not less than 80 rods nor more than 100 rods from the crossing; neither did they ring the bell from said distance continuously thereafter until the crossing was reached. The engine and train of cars did not make a loud rumbling noise as it approached the crossing; neither was the noise audible to one in the center of the gravel road and

12 feet south of south rail of the track, seated in the back seat of the automobile.

The evidence of appellee followed very closely and supported the allegations of her complaint. The theory of the complaint was that the negligence of appellant's servants in failing to sound the whistle and ring the bell, as provided by §13038 Burns 1926, was the proximate cause of appellee's injuries.

Appellant relies upon the following alleged errors for reversal of the judgment: overruling the motion of appellant to make the complaint more specific; the demurrer to the amended complaint; motion for a new trial; for judgment on answers to interrogatories. The appellant presents the following causes in the motion for a new trial; (1) the verdict of the jury is not sustained by sufficient evidence; (2) the verdict is contrary to law; (3) the court erred in the giving and refusing to give certain instructions; (4) the court erred in the admission and rejection of certain testimony; (5) the court erred in the following: "After the jury had returned into open court with their general verdict, interrogatories and answers thereto, the defendant thereupon filed its written motion asking that the jury be required to return to its jury room and answer interrogatories eight, nineteen, twenty, twenty-two, and forty-four more specifically, which motion the court sustained, and gave the jury the following instruction orally, viz.: 'Motion has been filed to require you to make your answers to interrogatories Nos. eight, nineteen, twenty, twenty-two and forty-four and each of them more specific and definite. If you find there was any evidence on these matters, you will answer the same according to the evidence. If you find there is no evidence, you will say so by your answer,'" to which action of the court the defendant objected and excepted. Misconduct of the jury, in that, when the jury, after the instruction of the court to answer inter-

rogatories Nos. eight, nineteen, twenty, twenty-two and forty-four did so, the jurors so answered the same that it affirmatively appears that the jury was prejudiced and that defendant was deprived of a fair trial by an impartial jury.

We do not deem it necessary to set forth the material averments of the complaint. The court did not err in overruling appellant's motion to make the amended complaint more specific.

Appellant's memorandum attached to the demurrer, its several propositions in support of the causes for new trial, to wit, that the verdict is not sustained by sufficient evidence and is contrary to law, and its motion for judgment on the jury's answers to the interrogatories, present but one question for our consideration, to wit: Is it within the province of an appellate tribunal, under the facts of this case, to say, as a matter of law, that the appellee was guilty of contributory negligence?

In order to sustain its contention that appellee, under the facts most favorable to her, is guilty of contributory negligence, appellant, in substance, says: That appellee had a clear view to the east when the automobile in which she was riding reached a point within 27 feet of the tracks; that appellee was bound to continually look and listen for the approaching train and to warn the driver; that the law will presume that she saw the train if she could have seen it; that, when the automobile was 27 feet from the railroad tracks, the train was 100 feet from the point of collision; that the automobile traveled the distance of 27 feet in two and three-tenths seconds, and she should have heard the noise of the approaching train in time to have warned the driver.

In answer to appellant's proposition, we observe that the jury was confronted with certain salient facts, viz.: That appellee's father was driving the automobile and was aware of the fact that he was approaching a railroad

crossing; that the father, at a distance of 100 feet from the crossing, changed his machine into low gear, and his automobile traveled toward the crossing at a rate of speed not to exceed seven miles per hour, looking and listening for on-coming trains; that appellee's mother occupied the front seat to the right of the father and she was likewise looking and listening for trains; that appellee's grandmother was seated to the right of appellee, with an immediate and instant view to the east, the direction from which the train was coming, all of which the appellee saw and was fully conscious of; that appellee also was looking and listening for trains, and that her natural and immediate view was to the west; that the servants of appellant did not blow the whistle nor ring the bell, and the train was approaching at the rate of 30 miles per hour, and made no noise to attract appellee's attention.

In this case, it was the duty of appellee to exercise such care as a reasonably prudent person would exercise under like circumstances, and, if she has so failed to do, and such failure proximately contributed to her injury, she cannot recover. *Abney* v. *Indiana, etc., Traction Co.* (1908), 41 Ind. App. 53, 83 N. E. 387; *Guion* v. *Terre Haute, etc., Traction Co.* (1924), 82 Ind. App. 458, 143 N. E. 20; *Union Traction Co.* v. *Gaunt* (1922), 193 Ind. 109, 135 N. E. 486.

We cannot agree with appellant that an appellate tribunal, under all the facts of this case, can say that, in an instant of time, a fraction over two seconds, appellee should not only have looked to the west but to the east in time to have discovered the train approaching and to have warned her father of the impending danger. *Cleveland, etc., R. Co.* v. *Lynn* (1911), 177 Ind. 311, 95 N. E. 577, 98 N. E. 67; *Wabash R. Co.* v. *Bixby, Admr.* (1928), 88 Ind. App. 52, 163 N. E. 231. Appellee, seated on the left, aware of the danger incident

to a railroad crossing, instinctively looked to the west when her view in that direction became unobstructed; if we were to assume that appellee consumed one and one-half second of time in directing her vision to the west, then turned her eyes to the east, her view delayed to some extent by her grandmother, then her appreciation of an impending disaster and the act of the collision would be practically simultaneous, and time to warn the driver, even if such were proper in the exercise of ordinary care, would be infinitesimal. In the case of *General, etc., Car Corp.* v. *Melville* (1925), 198 Ind. 529, 145 N. E. 890, Judge Ewbank, speaking for the court, said: "What prudence and exercise of care would require persons to do in an interval of a few seconds to guard against the negligent act of another was peculiarly a question for the jury." We adopt his language as applicable to the instant case.

We are not to say under the facts of this case that appellee should have looked and listened, at a particular time, in a particular direction, or from a particular place. *Cleveland, etc., R. Co.* v. *Lynn, supra.*

A review of the many reported cases involving contributory negligence of a guest in an automobile who has been injured or killed in a collision between a train and automobile at a railroad crossing forces us to the conclusion that the facts of each case must be fully understood before the general principles of law applicable to contributory negligence can be correctly applied. As a general proposition, a guest is not chargeable with the negligence of the driver; the guest, however, is not absolved from all personal care for his own safety, and must, under all the circumstances of the case, exercise ordinary care to avoid injury—that is, such care as an ordinarily prudent person would exercise under like circumstances. In determining whether a guest has exercised ordinary and reasonable care, many factors

must be taken into consideration, for instance, the position of the guest in the car, the known and proved ability of the driver, and whether, immediately preceding the accident, the driver was operating the automobile in a careful and prudent manner, the knowledge of the driver of the existence of a railroad crossing, and his apparent appreciation of the danger incident thereto, the physical surroundings, including the opportunity of the driver and the other occupants of the automobile to see the railroad track each way from the crossing, and to hear the whistle, bell and noise of the approaching train, the time permitted the guest to warn the driver and to take such measures as an ordinarily prudent person would to prevent injury to one's self. Thus, whether the guest has exercised ordinary care which a reasonably prudent person would under like circumstances is generally a question for the jury. If, from all the evidence and the law applicable thereto, two reasonable inferences could have been drawn by the jury, one favorable to or tending to prove that the guest exercised ordinary care, the other that he failed to exercise such care as an ordinarily prudent person would under like circumstances, an appellate tribunal will not decide which inference should have controlled the jury. In case interrogatories are submitted to the jury and the jury, by its several answers thereto, finds the facts specially, and two reasonable inferences can be drawn therefrom under the law, one of contributory negligence of the guest, the other an absence of the same, an appellate tribunal will not say as a matter of law that the answers are in irreconcileable conflict with the general verdict. *Cleveland, etc., R. Co.* v. *Moneyhun* (1896), 146 Ind. 147, 44 N. E. 1106, 34 L. R. A. 141; *Malott* v. *Hawkins* (1902),159 Ind. 127, 63 N. E. 308; *Ohio, etc., R. Co.* v. *Collarn* (1881), 73 Ind. 261, 38 Am. St. 134; *Smith* v. *Wabash R. Co.* (1895), 141 Ind. 92, 40 N. E. 270; *Balzer* v. *Waring* (1911),

176 Ind. 585, 95 N. E. 257, 48 L. R. A. (N. S.) 834; *Evansville, etc., R. Co.* v. *Berndt* (1909), 172 Ind. 697, 88 N. E. 612; *Pittsburgh, etc., R. Co.* v. *Arnott, Admx.* (1920), 189 Ind. 350, 126 N. E. 13.

We call appellant's attention to the following cases which, in addition to those already cited, the reading of which aided the court in arriving at the conclusion that, under the facts of this case and the answers of the jury to the interrogatories submitted, the question of contributory negligence of appellee was one of fact for the jury and not one of law. *Chesapeake, etc., R. Co.* v. *Meyer* (1928), 150 Va. 656, 143 S. E. 478; *Crawley* v. *Chicago, etc., R. Co.* (1928), 204 Iowa 1385, 213 N. W. 403, 53 A. L. R. 964; *Terwilliger* v. *Long Island R. Co.* (1912), 152 App. Div. 168, 136 N. Y. Supp. 733; Id., 209 N. Y. 522, 102 N. E. 1114; *Carnegie* v. *Great Northern R. Co.* (1914), 128 Minn. 14, 150 N. W. 164; *Murray* v. *Baltimore, etc., R. Co.* (1924), 281 Pa. 474, 127 Atl. 71; *Ommen* v. *Grand Trunk R. Co.* (1918), 204 Mich. 392, 169 N. W. 914; *Carbaugh* v. *Philadelphia, etc., R. Co.* (1918), 262 Pa. 25, 104 Atl. 860; *Louisville, etc., R. Co.* v. *Schuester* (1919), 183 Ky. 504, 209 S. W. 542, 4 A. L. R. 1344; *Engstrom* v. *Canadian Northern R. Co.* (1924), 299 Fed. 929; *LeFebvre's Admr.* v. *Central Vermont R. Co.* (1924), 97 Vt. 343, 123 Atl. 211; *Hines* v. *Johnson* (1920), 264 Fed. 465; *Collins* v. *Hustis* (1920), 79 N. H. 446, 111 Atl. 286; *Indianapolis, etc., Traction Co.* v. *Thompson* (1922), 81 Ind. App. 498, 134 N. E. 514. See *Leclair* v. *Boudreau* (1928), 101 Vt. 270, 143 Atl. 401, 63 A. L. R. 1427.

In this case, the complaint alleged, and the jury so found by its general verdict, that the failure of appellant to give the statutory signals of the approach of train at the crossing in question at the time of the accident in controversy was the proximate cause of appellee's injury. *Baltimore, etc., R. Co.* v. *Young* (1899), 153 Ind.

163, 54 N. E. 791; *Pittsburgh, etc., R. Co.* v. *Terrell* (1911), 177 Ind. 447, 95 N. E. 1109, 42 L. R. A. (N. S.) 367.

After a careful examination of the instructions given to the jury by the court on its own motion, we are of the opinion that the court did not commit reversible error in the giving of any particular instruction; neither are we impressed by the argument of appellant that error can be predicated, either separately or severally, on the failure of the court to give the several instructions tendered by appellant, in the light of the instructions given by the court. Appellant does not refer us to an authority in support of his several points in reference to the alleged errors, and we know of none in confirmation thereof.

No error is available to appellant in the admission and refusal to admit certain items of evidence of which it complains. Again, we call appellant's attention to the fact that he cites no authority in support of his several points addressed to the several alleged errors mentioned in this paragraph. If it were conceded that appellant's objections were well taken, it is not shown, and by no process of reasoning can we conclude, that appellant was harmed by the admission of or refusal to admit the evidence referred to. However, see *Chawkley* v. *Wabash R. Co.* (1927), 317 Mo. 782, 297 S. W. 20.

The several answers to the interrogatories do not disclose partiality on the part of the jury. The jury was confronted with conflicting evidence as to whether the train crew gave the necessary whistles and caused the bell to ring continuously. They chose to believe those witnesses that testified to the contrary. It is not for an appellate tribunal to take from the jury the right to pass upon the credibility of the witnesses, and the weight to be given to their testimony, or to say what witnesses the jury shall believe and whom they shall not believe.

Judgment affirmed.