MAYALA *v.* UNDERWOOD VENEER CO.

1. Negligence—Ordinary Incidents of Operation—Expert Testimony.
    Acts which look dangerous when viewed in retrospect, especially by those not wholly familiar with conditions of the work of a particular business, may be but ordinary incidents of operation and the court must rely upon the testimony of those familiar with such matters to find the test of whether an act is ordinary practice or a matter of negligence.

2. Same—Lumbering Operations—Findings of Court—Contributory Negligence—Evidence.
    In action, tried without a jury, by trucker against corporation for injuries sustained through alleged negligence of defendant's jammer and hooker while loading logs on plaintiff's truck, evidence as to duties of respective parties in loading 20 logs in about 15 minutes and the general practice in such cases *held*, to prevent finding plaintiff, acting as toploader, guilty of contributory negligence as a matter of law or that finding of trial court that defendant's employees were negligent was against the preponderance of the evidence.

3. Appeal and Error—Cases Tried Without Jury—Preponderance of Evidence.
    While review on appeal in action at law tried without a jury is upon the preponderance of the testimony, Supreme Court does not substitute its judgment on questions of fact unless facts clearly preponderate in opposite direction.

4. Negligence—Lumbering Operations—Logjammers—Evidence.
    Jammer operating logjammer loading logs on plaintiff's truck and trailer at rate of one in less than a minute *held*, clearly guilty of negligence where outside log was moved after it had been placed on bunks on truck, especially while plaintiff, then working as toploader and engaged in fastening it to hinged stake at end of bunk, was in view of jammer at all times, and log could not have moved otherwise than because logjammer cable was pulled.

5. Appeal and Error—Impeachment Testimony—Order of Proof
—Trial Without Jury—Evidence.

Introduction of statements taken from defendant's employees
shortly after accident to plaintiff, over defendant's objection,
and not presented under usual practice covering impeachment
testimony *held,* not to require reversal where trial was before
court without a jury and even if eliminated a verdict for plain-
tiff would nevertheless be justified by the evidence.

6. Damages—Personal Injuries—Measure of Damages.

Measure of damages for personal injuries sustained by trucker
is the value, in the open market, of the labor and services
which he had been able to perform before the injury and was
thereafter unable to perform.

7. Same—Trucker—Loss of Earnings—Seasonable Work.

In action by trucker for injuries sustained because of negligence
of defendant's employees, allowance of $4,000 for two years'
loss of earnings is reduced to $2,000 where only evidence of
reasonable worth of his labor was that it would be about $5
a day and it is undisputed that hauling logs is a seasonable
job lasting about six months a year.

Appeal from Gogebic; Driscoll (George O.), J.
Submitted June 22, 1937. (Docket No. 78, Calendar
No. 39,430.)  Decided October 4, 1937.

Case by John William Mayala, also known as Wil-
liam Mayala, against Underwood Veneer Company,
a Wisconsin corporation, for personal injuries sus-
tained in loading logs on a truck.  Judgment for
plaintiff.  Defendant appeals.  Modified and af-
firmed.

*Jones & Patek* and *Leonard J. McManman (John
S. McDonald,* of counsel), for plaintiff.

*William F. Pellow,* for defendant.

Fead, C. J.  Defendant reviews judgment for
$7,866.15 in favor of plaintiff on trial before the
court without a jury.

Plaintiff had a contract to haul logs for defendant. After hauling for two days he was injured on October 3, 1935. His hauling outfit consisted of a truck with a platform on the rear end, supporting a bunk, and a two-wheeled trailer with a bunk on it, attached to the truck by a gooseneck reach. A hinged stake was on each end of the bunks. Tie chains ran from bolts located on the inside and toward the center of the bunks.

The logs were loaded by means of a gasoline jammer, a sort of crane, with a log boom carrying a pulley, through which ran a main cable. Two cables were attached to the main cable and at the end of them were iron hooks, called pups, which were fastened to the ends of the log in order to raise it. There was a short piece of chain or rope attached to each pup, used by the "hooker" to steady and guide the log and to pull out the pup when the log was in place on the truck. The outside log was tied or cornerbound by throwing the chains over it and attaching them to the stakes.

The jammer operator and the hooker were employees of defendant. Plaintiff was his own toploader and directed the placing of the logs on the truck.

At the time of the accident the jammer operator stood south and a little east of plaintiff's outfit. The first log had a slight belly in it and weighed about 1,400 pounds. It was laid on the north side of the bunks. Plaintiff claimed it was the duty of the hooker to remove the pup as soon as the log was in place. The hooker at the east end did so. Plaintiff raised the stake and went under the log at the west end to throw the chain over it to bind it. He stated that he went under the log before the pup at the west end had been released, relying upon the

duty of the hooker to remove it immediately. As he was about to throw the chain, the log moved and squeezed his head against the reach. He stated that he saw the cable pull at the log, causing it to strike his head. The negligence he alleges is that the hooker failed to do his duty to release the pup and the jammer man tightened the cable and caused the log to move. He asserts that it was not only the duty of the jammer man not to move the log after it was in place but also that he, plaintiff, was always in plain sight of the jammer man and the danger of moving the log was apparent to the latter.

Defendant claims that it was the duty of plaintiff to hold the west end of the log in place with a cant-hook until the pups had been removed; plaintiff could have reached over the log and pulled up the chain to make the corner binding; plaintiff's outfit was dangerous and not in accord with good logging practice because the tie chains were attached on the inside of the bunks instead of the outside; plaintiff had not gone under the log to throw the chain on any prior occasion in the presence of any of defendant's employees, and it was dangerous practice to do so; the jammer man did not move the log on the truck but it slipped of its own accord after the pup had been released, probably because it had been snowing and the bunk was wet.

Plaintiff denied that it was his duty to hold the end of the log until the pup had been removed; claimed it would have been as dangerous to reach over for the chain as to go under the log; his outfit was constructed as were others; it was ordinary practice to go under the log to throw the chain and he had done it before on most or all of the other occasions when he was hauling for defendant and defendant's employees had seen him do it; the log

could not have moved of its own accord because the belly was down, and because the weight of the log tilted the bunks toward the north and it could not slide uphill; also he saw the cable pull on the log; in going under the log he was following the usual practice, well known to defendant's employees; he relied upon them to do their duty and if they had done it the accident could not have occurred.

In addition to the general conditions, defendant contends that plaintiff was guilty of contributory negligence, as a matter of law, in going under the log knowing that the pup at the west end had not been released. Plaintiff asserts that his usual load was 20 logs, loaded in 15 minutes, and that each person engaged in loading had his part to play and he relied upon the hooker to release the pup immediately.

The claims of both parties were supported by direct and expert testimony and produced a clear issue of fact. The act of plaintiff in going under the log before the pup had been released seems dangerous and bordered closely upon contributory negligence. But acts which look dangerous when viewed in retrospect, and especially by those not wholly familiar with the conditions of the work, nevertheless may be ordinary incidents of operation. The court must rely upon the testimony of those familiar with such matters to find the test of whether an act is ordinary practice or a matter of negligence. In view of the testimony as to the duty of a hooker to release the pup, of the jammer man not to move the log after it had been placed on the truck, the right of plaintiff to rely upon the others to perform their duty and the general practice in such cases, we cannot say that plaintiff was guilty of negligence as a matter of

law, nor, indeed, that the finding of the court was against the preponderance of the evidence.

While the review in this court is upon the preponderance of the testimony—"We do not substitute our judgment on questions of fact unless they clearly preponderate in the opposite direction." *Alexander* v. *Sanders,* 279 Mich. 465.

As to the negligence of defendant, the preponderant physical fact is that because the heavy log would tilt the bunks to the north the log could not well have defied the laws of gravity and slipped to the south and against plaintiff's head unless it had been moved by the cable operated by the jammer man. In addition to the fact that it was his duty not to move the log after it was on the truck, the jammer man could see plaintiff at all times and, if he moved the log after plaintiff went under it, he was clearly guilty of negligence.

It may be remarked also that this is a case in which a view of the witnesses is of importance as affecting their credibility. We would not feel justified in holding the court guilty of error on its finding of liability.

Shortly after the accident, plaintiff's attorney took long statements from defendant's jammer man and hooker, which were admitted in evidence over defendant's objection. They were not presented under the usual practice covering impeachment testimony. If the trial were before a jury, their reception might require reversal. But as the trial was before the court, they may be given their proper effect; and if they were eliminated entirely, the verdict for plaintiff nevertheless would be justified by the evidence.

In measuring the damages, the court allowed $4,000 for two years' losses of earnings. The rule

is that the measure of damages is the value of plaintiff's labor and services in the open market and which he lost by reason of defendant's negligence. *Gleason* v. *Lowe,* 232 Mich. 300; *Hunter* v. *Baldwin,* 268 Mich. 106.

Plaintiff's contract with defendant had no limitations of time or amount. It is undisputed the hauling of logs is a seasonal job lasting about six months in the year. Plaintiff offered no testimony of his services during the time trucking was not done nor of the market value of his services as a trucker. The only evidence of reasonable worth of the labor of a trucker was that it would be about $5 per day. Under the undisputed testimony, we feel compelled to reduce the allowance for loss of earnings to $2,000. The other allowances of damages were not at all unreasonable in view of plaintiff's injuries and need no discussion.

The judgment will be vacated and the cause remanded to circuit court for entry of judgment for plaintiff in the sum of $5,866.15, with costs in circuit court. Defendant will have costs in this court.

NORTH, WIEST, BUTZEL, BUSHNELL, SHARPE, POTTER, and CHANDLER, JJ., concurred.