**FOSTER et al. v. BUCKNER.**

**No. 11752.**

United States Court of Appeals
Sixth Circuit.

April 7, 1953.

As Amended on Denial of Rehearing
May 13, 1953.

See also D.C., 105 F.Supp. 279.

William J. Eggenberger, Detroit, Mich., for appellants.

James A. Markle, Detroit, Mich., Frederick G. Palliaer and Cornelia Groefsema, Detroit, Mich., on brief, for appellee.

Before SIMONS, Chief Judge, and ALLEN and MILLER, Circuit Judges.

ALLEN, Circuit Judge.

This appeal rises out of a judgment for damages for personal injuries.[1]

At the time of the accident the plaintiff, employed by Thomas Fensom, contractor, was painting the structural iron work in a steel plant which McLouth Steel Company was constructing in Trenton, Michigan. Defendants, subcontractors, were in charge of certain machinery setting. At the same time defendants were working in a plant called the mill building in which they operated the overhead traveling crane. The mill building is approximately a fifth of a mile long and the peak of its roof is approximately 70 or 75 feet above the floor. The crane was 22 feet wide and moved on two rails which extended the length of the building near the top of the walls.

At the time of the accident, the morning of June 30, 1949, the plaintiff and his fellow painter, Roberts, had started to paint steel girders in the mill building under the apex of the roof. The crane at the same time was being used in the erection of the hot strip mill, the slab mill and the various mill tables and other machinery and was moved back and forth frequently, although sometimes it was stationary for an hour or more. It was operated by defendants' employees. Defendants' foreman gave the signals to the operator and was responsible for starting the crane. The painters were some 75 feet above the floor and above the span of the rails of the crane.

In their work the painters used a platform called a "pick" about 24 feet long and 18 inches wide, which rested on parts of the steel structure of the building. As the work progressed the pick was lowered by heavy ropes attached at each end. The ropes were thrown over a steel beam or truss and paid out slowly in order to lower the pick to the required position. After it was lowered the loose part of the rope was thrown back on it. Plaintiff tied the rope on his end of the pick into a bundle at the end of the rope leaving about 20 feet free. In accordance with the regular practice plaintiff threw the rope down on the pick and expected to gather up the rope, his pail of paint, etc. after he climbed down to the new position. Presumably plaintiff's rope slipped over the side of the pick for two witnesses saw it hanging down from 8 to 10 feet before the crane started to move. As the plaintiff prepared to climb down, the crane was not moving. Roberts climbed down to the pick and plaintiff handed the paints and brushes to Roberts, supporting himself at the same time by hanging to the steel structure. He then climbed down the beams and the trusses to the pick. As he stepped on the pick, it was jerked out from under him by the crane which had begun to move and had tangled with the hanging rope. The rope was torn apart and wound up in the trolley of the crane. The plaintiff fell some 60 feet to the concrete floor, striking a steel girder in the fall.

The negligence of the defendants was alleged to consist in failure to have a safety man on the crane to observe possible obstacles and dangers ahead; failure to

---

sound a warning bell attached to the crane for that purpose; and failure of defendants' employees to observe the rope hanging in the path of the crane before giving the signal to start. ·

Upon each of these allegations of negligence substantial evidence was presented supporting the jury's finding of lack of care on the part of the defendants. The crane operated at so considerable a height and the mill was so long that the employees on the floor could not foresee the possibility of accident so well as someone on the crane. It was therefore suggested that there be a lookout man on the crane itself to warn the driver. Testimony was given that this was the local practice in certain well-known construction projects, and the defendants used it for a time after one accident. This evidence was pertinent with reference to the existence or nonexistence of negligence on the part of defendants. Delbusso v. American Cement Plaster Company, 165 Mich. 318, 130 N.W. 702. The failure of defendants to follow the usual practice is evidence of negligence. Hoyt v. Jeffers, 30 Mich. 181; Slack v. Curry, 177 Mich. 437, 143 N.W. 602.

Defendants had notice of the particular hazard because of the near accidents and dangerous situations which involved the crane shortly before this occurrence. The day before the accident the crane had to be stopped twice when the painters were dropping a rope to pull up the paint. Also, the crane had tangled a cable and bent a piece of pipe in an operation involving steamfitters' work. Although the stewards from all the crafts applied to defendants' superintendent for a lookout man upon the crane this request was refused.

The large warning bell was not used before the accident, although it was usually sounded every time the crane was moved.

With reference to the failure of defendants' employees to observe the rope before giving the signal to start the crane it was testified by defendants' general foreman that the rope was hanging down at least a minute before the crane started. Another of defendants' employees saw the rope for a longer time and two of plaintiff's witnesses stated the rope had been hanging down from two to five minutes before the crane was moved. It was a question of fact for the jury whether the defendants' foreman should have observed the rope and either failed to look for it before giving the signal to start the crane or observed it and ignored it. On all these points evidence was presented from which the jury was entitled to conclude that defendants' employees were guilty of negligence directly contributing to the accident.

Defendants contended that the court erred in denying the defendants' motion for a directed verdict and that the plaintiff was guilty of contributory negligence as a matter of law. Plaintiff was required to exercise reasonable care for his own safety. He was working, however, in a place where he had a right to be, painting the roof, and all of defendants' employees had notice, actual or constructive, of his presence there. He was doing what any ordinary workman would have done under similar circumstances. The Supreme Court of Michigan in Reedy v. Goodin, 285 Mich. 614, 281 N.W. 377, where a similar contention was made, held that contributory negligence is ordinarily a question of fact for the jury. It stated that the fact that plaintiff was attending to his duties at the time of the injury so that his attention was directed to objects other than the truck which injured him made contributory negligence a question of fact. Plaintiff was entitled to rely upon defendants' employees to perform their duty and to follow the general practice in such case. Mayala v. Underwood Veneer Company, 281 Mich. 434, 275 N.W. 198. It was contended there that the plaintiff had been guilty of contributory negligence in going under a log to throw a chain in the course of loading a truck with logs. The record showed, however, that this was an ordinary incident of operation. The court determined that under such circumstances it could not hold plaintiff guilty of negligence as a matter of law.

Neither is the asserted doctrine of assumption of risk applicable. In order for this doctrine to bar recovery intentional

exposure of himself by a workman to a known danger must be so unreasonable that a reasonably prudent man in his position would not do so. Restatement of the Law of Torts, § 466, Types of Contributory Negligence. It was a question of fact for the jury whether a reasonable man would have exposed himself to the hazards of painting high under the roof as did the plaintiff.

■ The principal legal question in the case is raised by the denial of defendants' motion for judgment of no cause of action on the pleadings or for summary judgment. This was based upon the proposition that the plaintiff elected to take compensation. Defendants urged that within the provisions of § 17.189, Michigan Statutes Annotated, Comp.Laws 1948, § 413.15, and the ruling of this court in Dinardo v. Consumers Power Company, 6 Cir., 181 F.2d 104, plaintiff had elected to proceed against his employer, and thus was barred from proceeding against a third person claimed to be a tort-feasor. However, this record contains no proof of election by plaintiff to take compensation. The insurance carrier for plaintiff's employer had paid certain substantial charges for nursing plaintiff. It was uncontroverted that these payments were not requested by plaintiff nor made by or to him. In fact, plaintiff did not know that these expenses had been paid by the carrier.

■■ The burden of proof was on defendants to show the existence of an election. No such showing is made by proof of payment directly to the nurse by the employer's insurance carrier without the knowledge of the plaintiff. •

■ The Michigan courts have held that allowing payment of medical and hospital expenses by the insurance carrier of the employer does not constitute an election to accept compensation. Fox v. Detroit United Railway, 218 Mich. 5, 187 N.W. 321.

■ A further conclusive answer to this contention is that the Michigan statute which was construed in the Dinardo case has now been changed. An amendment was enacted to § 17.189 in 1952, Pub.Acts 1952,

No. 155, after the instant action was commenced but while it was pending. The former statute required an employee to elect whether to pursue his remedy against the employer for compensation or to seek his common law remedy against the third party causing the injury. Under the present statute the employee may receive compensation or take proceedings to enforce compensation payments and also sue the third party. The statute provides in substance, that in case of recovery against the third party, after deducting expenses of recovery, the amount of the judgment is to be used first to reimburse the employer or the workmen's compensation insurance carrier for amounts paid or payable under the compensation act to date of recovery and the balance is paid to the insured employee or his dependents. This statute pertains to the remedy and hence applies to the present action. Judd v. Judd, 125 Mich. 228, 84 N.W. 134; Heineman v. Schloss, 83 Mich. 153, 47 N.W. 107; Nash v. Robinson, 226 Mich. 146, 197 N.W. 522; Detroit Club v. State of Michigan, 309 Mich. 721, 16 N.W. 2d 136; Stott v. Stott Realty Company, 288 Mich. 35, 284 N.W. 635. Since the change in the statute created no new cause of action and the amendment merely limited a procedural defense, the amended statute governs this controversy. The Dinardo case, supra, does not apply and the claimed issue does not arise.

The numerous contentions with reference to error at the trial have been considered and are overruled. The trial court did not abuse its discretion in denying the motion for new trial. Plaintiff was 35 years old at the time of the accident. He suffered a comminuted fracture of the left femur, a compound fracture of the right ankle, compression fracture of a vertebra, a badly comminuted fracture of the left wrist, compression of the spinal cord which completely paralyzed the reproductive organs and produced paralysis of the urinary bladder and the lower bowel. The right ankle could not be reduced because it was pulverized. The plaintiff was in a hospital for over seven months immediately after the accident and underwent various important operations thereafter. He suffered great pain and the

record compels the conclusion that he never will be able to do work that requires use of his feet and legs. It is highly questionable whether he can ever work. In light of the injuries and of plaintiff's earning power the verdict was not excessive. We find no reversible error in the admission of the testimony in the conduct of the trial or in the charge of the court.

The judgment of the District Court is affirmed.