CARROLL, CHAS., Chief Judge.
The appellant, Florida East Coast Railway Company, through its trustee, appealed from an adverse judgment based on a verdict for $32,000, in favor of a widow suing for wrongful death of her husband under Sections 768.01 and 768.02, Fla.Stat., F.S.A.
His death resulted from a collision between his automobile and appellant’s train at the 163rd Street grade crossing, in North Miami Beach.
Appellant raised the following points:
1. Whether or not there was any evidence upon which to submit the case to the jury.
2. Whether the verdict was excessive under the comparative negligence law that applied to this case.
3. Whether the court erred in refusing to instruct the jury on the applicabe law as to right of way, speed of trains, the nature of the warning signals required and when the duty of the railroad to stop or slow down commences.
The complaint as amended charged the defendant railway company with negligence, (1) in the operation of the train, (2) in maintenance of the crossing, and (3) in maintenance and operation of warning devices at the crossing.
There was substantial evidence of negligence of the railway company, sufficient to sustain the action of the court in permitting the case to go to the jury, and to support the verdict based on a finding of negligence of the defendant railway company. Negligence of the driver would not bar recovery, but only serve to reduce the damages under the comparative negligence rule, applied as provided for in Section 768.06, Fla.Stat., F.S.A.
The train was operated through the 163rd Street crossing at a speed of 75 miles per hour. North Miami Beach is a town of some 18,000 inhabitants, and 163rd Street is a principal street in the town. It is a busy thoroughfare, and the traffic on it was heavy at the time of the accident.
There was evidence that the warning gates at the crossing had ■ operated imperfectly previously, and earlier that same day.
The evidence disclosed that operational procedure approved by the company called for the warning signals to begin operating at least 20 seconds before a train reached the crossing; that the gates should begin to operate about five seconds after the other signals (bells and lights) commenced; that the gates then required about 10 seconds to lower fully. Thus, a train traveling at the maximum (company) authorized speed of 79 miles per hour would pass through the crossing approximately five seconds after the gates descended and were in position. The train in this case was traveling only a few miles per hour less than the 79 mile maximum.
The evidence further showed that in order for an electrical device to be actuated by an approaching train in time to operate the signals and gates on the above stated basis, the signal starting device should be located 2,747 feet short of the crossing, for a train traveling at a speed of 80 miles per hour.
From the evidence, the jury could have found that this tripping device was not located sufficiently far from this crossing to operate the signals, and particularly the gates, long enough in advance of the arrival of the train to meet the company’s own requirements, and to give fair and adequate warning of its approach. There was evidence indicating the tripping device was 2,423 feet from the crossing, and there was other evidence that a device which operated the gates was only 1,400 feet distant from the crossing; and the evidence did not show with any certainty which tripping device actually operated the signals on that crossing.
*174 The result here was that when the warning signals began, the train which was approaching at the rate of 75 miles per hour was so ominously close that the deceased, whose car was slowly passing the point where the gate would descend, appeared to panic. He stopped, and instead of extricating himself by proceeding forward across the tracks, he attempted to get off the tracks by backing up, but the gate descended behind or on the rear portion of his car. This gate was 12.5 feet from the center of the nearest track, which was a minimum distance under the company’s standard. In that position, when he was blocked by the gate from backing farther, and his car was not clear of the track involved, the train struck his cár, resulting in his death.
On the evidence produced in this case, it was within the province and was the duty of the jury to decide whether such operation of the train at the crossing, and the manner in which the warning signals and devices were maintained and operated, amounted to negligent conduct on the part of the railway company; and the appellant’s first argument, to the effect that the evidence was insufficient to justify submission of the case to the jury, has not been sustained.
The appellant’s claim as to exces-siveness of the verdict is bottomed on the comparative negligence feature. The appellant’s contention is that the verdict is excessive because of the high comparative degree of negligence of the plaintiff driver.
As we have pointed out earlier in this opinion, although the evidence was in conflict in certain respects, it was adequate to support the jury findings of negligence on the part of both the railway company and the driver. On the circumstances and facts of this case as disclosed by the record, it was within the province of the jury to assign a ratio of negligence to the parties, and the appellant has failed to demonstrate error in that respect.
This brings us to a consideration of the assignments of error relating to the failure of the court to give appellant’s requested charges numbered 4, 6, 7, 9, and ll.[1]
Appellant’s requested charge number 9, the refusal to give which was also assigned as error, was given by the court in part and refused in part.[2]
*175 Those individual requested charges must be considered in the light of all of the charges given, relating to the topic with which they deal, and if when so considered the law appears to have been fairly and adequately presented by the court to the jury, assignments based on the refusal to give such charges must fail. A single charge need not contain all of the law relating to the particular subject treated, and a refusal of the trial judge to give a requested charge, or group of charges dealing with a particular topic or phase of the case, will not support an assignment of error when the charges given by the court on that subject, taken together and read as a whole, are found to have fully and clearly instructed the jury on the law applicable to the case, in that regard. Atlantic Coast Line R. Co. v. Crosby, 53 Fla. 400, 43 So. 318; Martin v. Stone, Fla.1951, 51 So.2d 33; Dowling v. Loftin, Fla.1954, 72 So.2d 283; Martin v. Johns, Fla.1955, 78 So.2d 398.
The charges given in this case on the duties and obligations of the parties bearing on negligence,[3] sufficiently pre *176 sented the applicable law, in the light of which it is made to appear that no error was committed by the court’s refusal to give certain charges in the particular language requested by the appellant. See Luster v. Moore, Fla.1955, 78 So.2d 87.
Affirmed.
HORTON and PEARSON, JJ., concur.

. The appellant’s requested charges 4, 6, 7, and 11 were as follows:
“4. The rights of operators of automobiles on the public highway at railroad crossings are mutual with those of the railroad, and both must use reasonable care towards each other, but from necessity the railroad train has the right-of-way over the crossing, and preference is accorded to it over travelers on the highway.”
“6. It is the duty of a railroad in operating its train to use ordinary care to warn people on the highways of the approach of its trains. There is no law in Florida that prescribes the number of signals which a railroad must give at a public crossing. Its duty is to give reasonably adequate warning in the circumstances. This warning ordinarily consists of the blowing of a whistle, the ringing of a bell.”
“7. The Court charges you that the law does not attempt to limit or prescribe the speed at which trains may run in crossing a public highway, and no rate of speed will of itself be construed as negligence on the part of a railroad. The only duty in this respect is to operate its trains with ordinary and reasonable care and diligence.”
“11. You are instructed that the engineer on a locomotive is not under a duty to stop or slow down until he realizes or, in the exercise of reasonable care, should realize that the driver of an approaching motor vehicle cannot or will not keep off the tracks.”

. The Court gave part of charge numher 9, refusing the portion shown in brackets, as follows:
“9. The engineer and fireman of a locomotive have the right to presume that an adult person on or near the track ahead of the moving engine will obey the instinct of self-preservation by getting off the traci if already on it, or by staying off it [and in such case the engineer and fireman are not negligent for *175 failing to stop or trying to stop unless they know, or in the exercise of reasonable care should have known, that the person would not or could not keep out of the way.]”

. The charges given by the court on this feature were as follows:
“The law imposes upon both the railroad and the automobile driver a duty to exercise ordinary and usual reasonable care under the circumstances, and at the time then and there existing.
“Tou are instructed that in the operation of a train in the State of Florida the defendant railroad and its employees are under an obligation to use all ordinary and reasonable care and diligence to avoid injuries to others.
“All of the facts and circumstances surrounding a collision must be considered in arriving at your decision of whether the defendant railroad was negligent.
“I charge you, gentlemen of the jury, that a railroad crossing is notice of impending danger at any time of day or night, and the duty resting on travelers to expect trains over the crossings never relaxes. When a person approaches a railroad track it is his duty under the law to look and listen for trains. The duty to stop depends on the circumstances revealed by looking and listening.
“If a railroad installs and maintains safety devices such as signals and gates at a public vehicular crossing, then it is the railroad’s duty and obligation to use reasonable care in the installation and maintenance of these safety devices so that these safety devices will reasonably perform their expected and required functions.
“Tou are instructed that while one approaching a railroad crossing at which he knows an automatic signal is maintained is entitled to place some reliance on it, he is nevertheless bound to use such care in addition as an ordinary prudent person would use under such circumstances.
“A railroad company operating its trains on the thoroughfare of a village must use greater care than in less frequented localities. The duties of a railroad company in respect and care of operating its trains are dictated and measured by the exigencies of the occasion and in the light of conditions and things at the place and at the time that an accident happens. In operating its railroad crossings and its trains in the streets of the town it is the duty of the railroad company to use such precautions by properly maintained warnings, applications of brakes or otherwise as may be reasonably necessary to avoid injury to a person traveling upon the public street.
“The railroad should regulate the speed of its trains and the signals of tlioir approach at crossings so as to give reasonably adequate warning in the circumstances to a traveler who is exercising reasonable care for his own safety.
“I instruct you that under the law of the State of Florida it is presumed unless shown to the contrary that a person acts reasonably so as to avoid injury or death to himself under the circumstances which then and there exist.
“A railroad is entitled to assume that automobile travelers on the highway will exorcise reasonable care and that motorists will adopt a rate of speed and be as vigilant to avoid collisions at crossings as the conditions warrant.
“The engineer and fireman of a locomotive have the right to presume that an adult person on or near the track ahead of the moving engine will obey the in *176 stinct of self-preservation by getting off the track if already on it or by staying off it.
“Where a person is confronted with a sudden emergency not caused by his own negligence, without sufficient time to.-determine with certainty the best course to pursue, then such person is not held to the same degree of judgment as would be required of him under usual or ordinary circumstances. This would apply to both parties.”