PER CURIAM.
The defendant appeals from jury verdicts rendered in favor of the plaintiffs in four separate actions which were consolidated for purposes of trial and appeal. The actions were for damages for the injuries and deaths which resulted from a collision between defendant’s south bound train and an automobile which had stalled upon the tracks at the 163rd Street crossing. The driver and owner of the vehicle, Mrs. Clara Manning, and a passenger in the front seat, Mrs. Clara Schweida, were killed. Mrs. Manning’s daughter, Linda, a passenger in the rear seat, was injured. Suits were filed for Linda’s injuries, for the wrongful death of Linda’s mother, and under the survival statute, for the estates of Mrs. Manning and Mrs. Schweida. Jury verdicts in favor of the plaintiffs were rendered in each case.
*667 The accident took place at the N.E. 163rd Street railroad crossing slightly west of ■Biscayne Boulevard at about S :30 P.M. on a clear day. The automobile in question had been stalled on the defendant’s tracks approximately 20 seconds prior to the impact. While all the signal and warning devices apparently operated as designed, the plaintiffs took the position that the defendant was negligent in traveling at an excessive •rate of speed for the existing conditions -or in delaying for an unreasonable length of time application of the emergency brakes •of the train. Testimony was introduced in support of both theories and the jury, after finding the defendant to have been 40% negligent, returned verdicts of $50,000 for Linda’s personal injuries; $30,000 for the wrongful death of Linda’s mother; and $1,075 and $521.20 for the estates of Mrs. Schweida and Mrs. Manning, respectively. The defendant filed various post trial motions to set aside the verdicts and judgments, for a new trial, for a final judgment for the defendant, and to transfer the estate cases 'to the Civil Court of Record. All such motions were denied.
Defendant has presented 21 points on appeal concerning various jury instructions; -evidentiary rulings; allegedly prejudicial statements of the plaintiffs’ counsel made during the course of the trial; excessive-mess of the verdicts in the personal injury and wrongful death cases; the sufficiency ■and weight of the evidence to support the verdicts; and the refusal of the trial court to transfer the estate cases to the Civil ■Court of Record. The first point we shall discuss is whether there was sufficient evidence to present a jury question as to the negligence of the defendant.
It should be noted that the crossing in question is one of the most heavily traveled in Dade County. A greater degree of care is placed upon the parties where the railroad crossing is more heavily frequented than otherwise.[1] A few blocks west on N.E. 163rd Street is the main shopping center of North Miami Beach. A few yards east on 163rd Street is Biscayne Boulevard (Route 1), one of the main north-south arteries in the county. Also, 163rd Street is one of the few causeways leading into Miami Beach.
There was testimony that the tripping device which activates the lights and bells is located 2,340 feet north of the crossing and the tripper for the gates is located 1,735.5 feet north of the crossing. The tracks run straight for a substantial distance north of the first tripping device. The train crew testified that they approached the crossing at about 50 miles per hour.[2] At that speed the train would hit the “bells and light tripper” about 32 seconds before reaching the-crossing and about 6 seconds later (before the train would hit the 1,735.5 foot tripper) a time relay would start the gates lowering. There was testimony that the car was stalled on the tracks just before the various signals started and somewhere between 15 and 20 seconds elapsed before the impact. The train’s engineer testified that at 50 miles per hour his train required not much less than 1,000 feet to stop. One expert testified that the minimum stopping distance at that speed is 1,050 feet. Another expert testified that there was a 30-35% variation in stopping distance depending upon various physical conditions. About 900 feet north of the crossing the engineer began a service application of his brakes and about 250-300 feet north of the crossing he swung into full emergency. The train came to a full stop about 956 feet south of the crossing. The engineer testified that the safety of his passengers would have been jeopardized had the emergency *668 brakes been applied without first applying the service brakes.
From the above facts we conclude that a jury could have reasonably found that the defendant was negligent in the following respects:[3]
(1) That the train was speeding since it required over 1,200 feet to stop after the emergency brakes had been applied and after it had already been slowed for 600-650 feet.
(2) That if the train was actually going 50 miles per hour it still could have been stopped in time to avoid collision if the emergency brakes had been applied immediately after the gates went down and the car was seen (or should have been seen) to have been on the tracks and in peril.
(3) That the speed the train was actually traveling was excessive in view of the character of the crossing and the distance from it at which the tripping devices were placed.
(4) That the tripping devices should have been located farther from the crossing to provide adequate warning for the public, considering the speed at which the train approached.
Thus, a jury question was presented and defendant’s motions for directed verdict were properly denied.
The remaining points on appeal relate to jury instructions, evidentiary rulings, trial incidents, statements by plaintiffs’' counsel during the course of the trial, exces-siveness of the verdicts and the failure of the trial court to transfer the estate cases-to the Civil Court of Record. We have-carefully considered each of these points and conclude that no useful purpose would be served by discussing them individually. The jury charges given covered the case-fairly and thoroughly. The evidentiary rulings, trial incidents and statements of' plaintiffs’ counsel were either sufficiently cured by the court’s instruction to disregard them, or were within the proper discretion of the trial judge.[4] Even if some of the rulings were improper, we can not say that they were so highly prejudicial as to warrant mistrial, reversal or a new trial.[5]
Further, an inspection of the entire record in the light most favorable to the party in whose favor the verdict was rendered fails to reveal that the verdict was wholly unsupported by the evidence, or that the jury was influenced by passion or prejudice, or that the amount awarded is such as to shock the judicial conscience.[6]
As to the defendant’s contention that the estate cases (the mother’s and the grandmother’s case) should have been transferred to the Civil Court of Record, we find nothing in the record to indicate that the amounts claimed and put in controversy were not so done in good faith.[7] Therefore, the trial judge’s ruling will not be disturbed.
Affirmed.

. Kenan, v. Austin, 146 Fla. 389, 1 So.2d 174; Florida Central & P. R. R. v. Foxworth, 41 Fla. 1, 25 So. 338, 345.

. Maximum speed provided for in the controlling ordinance of North Miami Beach is 50 miles per hour.

. See Atlantic Coast Line R. R. v. Britton, 109 Fla. 212, 146 So. 842; Martin v. Makris, Fla.App.1958, 101 So.2d 172.

. Morin v. Halpern, Fla.App.1962, 139 So.2d 495; Atlantic Coast Line R. R. v. Ganey, Fla.App.1960, 125 So.2d 576.

. H. I. Holding Co. v. Dade County, Fla. App.1961, 129 So.2d 693.

. Butler v. Borowsky, Fla.App.1960, 120 So.2d 656.

. Gannett v. King, Fla.App.1959, 108 So.2d 299.