MORGAN v. DETROIT, JACKSON & CHICAGO RAILWAY.

1. RAILROADS—FAILURE TO BLOW CROSSING WHISTLE — QUESTION FOR JURY.

In an action for personal injuries and damages to plaintiff's automobile caused by a collision with defendant's interurban electric car at a street crossing, whether or not defendant's motorman sounded a whistle before reach-

Private action for violation of statutory limitation as to speed of railroad, see note in 9 L. R. A. (N. S.) 373.

On duty of driver of automobile as to stopping, looking and listening at railroad crossing, see note in 46 L. R. A. (N. S.) 702.

On care required in selecting place of observation, see note in 37 L. R. A. (N. S.) 136.

ing the intersection, *held*, under conflicting testimony, a question properly submitted to the jury.[1]

2. SAME—NEGLIGENCE—EXCESSIVE SPEED—QUESTION FOR JURY.
   Whether it was negligence, under the circumstances shown, to run the interurban car through a village at a rate of 35 to 65 miles an hour, *held*, properly submitted to the jury.[2]

3. SAME—CONTRIBUTORY NEGLIGENCE.
   Where an automobile driver, who was struck and injured by an interurban car as he was crossing the track, stopped about ten feet from it and looked and listened, it cannot be said that he was guilty of contributory negligence, as matter of law, because he failed to stop his motor, or failed to stop farther from the track, where he would have had a better view of it in the direction from which the car was approaching.[3]

4. TRIAL — REFUSAL TO SUBMIT SPECIAL QUESTION NOT ERROR WHERE FAVORABLE ANSWER NOT INCONSISTENT WITH GENERAL VERDICT FOR PLAINTIFF.
   Refusal to submit defendant's special question to the jury was not error, where a favorable answer would not have been inconsistent with the general verdict for plaintiff.[4]

Error to Jackson; Parkinson (James A.), J. Submitted January 12, 1926. (Docket No. 93.) Decided April 15, 1926.

Case by John W. Morgan against the Detroit, Jackson & Chicago Railway for personal and other injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Cobb, Bisbee & Wilson,* for appellant.

*C. G. Parshall* and *R. H. Rossman,* for appellee.

BIRD, C. J. The plaintiff had judgment in the sum of $8,000 in a personal injury case, and defendant reviews the proceedings by error. Plaintiff lives on

---

[1]Railroads, 33 Cyc. p. 1104; [2]Id., 33 Cyc. p. 1108; [3]Id., 33 Cyc. pp. 1118, 1120, 1123; [4]Appeal and Error, 4 C. J. § 3012.

Maple street on the north side of defendant's interurban railway track in the village of Michigan Center. Late in the afternoon on the 7th day of October, 1923, plaintiff left his home, a few rods north of the railway intersection, with his automobile.   He was occupying the front seat and his wife and a lady companion the back seat.   He drove to the intersection, and stopped about 10 feet from the north rail.   He looked and listened but neither saw nor heard any car. He then started across.   The road was sandy and there was no planking against the rails.   As he started he glanced to the east and saw nothing, and then looked to the west.   The car was close to him and coming very fast.   He proceeded, but before his rear wheels cleared the track the car struck his automobile, demolishing it, killing his wife and the lady companion, and injuring him.   This suit was begun to recover for his injuries and the damages to his automobile.

The negligence of defendant principally relied upon by plaintiff was excessive speed and want of any warning of the approach of the car.   The defendant argues in this court that the court erred in refusing to direct a verdict for defendant because no negligence of defendant was shown, and it was further contended that the plaintiff was guilty of contributory negligence.

Was the Whistle Sounded?   Several witnesses testified that the whistle was not sounded.   All of them, save one, qualified themselves to be witnesses on that question by showing circumstances which tended to show that they were watching for the car and for the signal.   One of them, the attorneys were in dispute as to his testimony, so the court left it to the jury to determine what his testimony was and instructed them if he testified as defendant contended his testimony would have no probative value.   There was testimony that the whistle was sounded.   We think there was

competent testimony to carry that question to the jury.

Excessive Speed. The testimony fixing the rate of speed the car was going was all the way from 35 to 65 miles an hour. The motorman admitted he was behind his schedule and was trying to make up time. The proof is rather convincing that the car was going at least 50 miles an hour, but whatever the rate of speed was, it was going very fast, and it was a question for the jury to determine, under all the circumstances and surroundings, whether it was prudent for defendant to operate its car through the village at the speed at which it was going. *Hudson* v. *Railway Co.*, 227 Mich. 1. In the case cited, which was very similar on the facts to the one we are considering, we discussed the rule and said, in part:

"The principal items of negligence asserted by the plaintiff in his declaration and proofs were excessive speed, failure to keep the electric crossing bell in repair, and a failure to give the customary crossing signal. The testimony shows the train was moving from 40 to 45 miles an hour. Whether that rate of speed was excessive is a relative one. It depends on the attendant circumstances. A rate of 40 or 45 miles an hour in the open country would not be negligence, as a matter of law, and conditions might be such that it would not be negligence to pass through a village at that rate of speed. It would depend, however, on how well the crossing or crossings were protected, how straight the track was, whether the view of one crossing the tracks would be obstructed by curves, cars, foliage or buildings. *Thayer* v. *Railway Co.*, 93 Mich. 150; *Guggenheim* v. *Railway Co.*, 66 Mich. 150; *Ommen* v. *Railway Co.*, 204 Mich. 392, and cases cited."

We also quoted with approval the following paragraph from 22 R. C. L. p. 947:

"The general rule is that in the absence of a prohibitory statute or ordinance a railroad company may ordinarily run its trains at such speed as it sees fit,

and that a charge of negligence cannot be predicated on the rate of speed at which a train is run, unless there are attendant circumstances which make such speed negligence.   A rate of speed that would be entirely safe under some conditions may, however, be recklessly dangerous under other conditions, and it is generally held that it is for the jury to determine whether or not the speed at which a train was operated was negligent under all the circumstances."

So we conclude in the present case whether it was negligent for defendant to run its cars through the village at the high rate of speed it was going would depend upon the population of Michigan Center, how well the crossings were guarded, how straight the track was, how much travel there was in the village, and to what extent the view of the railroad track was obstructed by buildings, poles and foliage.   The jury inspected the location and had an opportunity to observe what the surroundings were.   This enabled them to better understand the evidence bearing thereon.   This question was one for the jury.

Contributory Negligence of Plaintiff.   Plaintiff drove to the railway track and stopped about 10 feet from the track.   He looked and listened and saw no car approaching.   He started up and looked again when he had a better view.   There was nothing in sight from the east.   He glanced to the west and the car was dangerously near him.   He was then on the track.   He concluded it would be better to proceed, but for the lack of a second more time he failed to clear it.   His view to the west was interfered with by a thornapple tree about 23 feet from the highway, whose branches extended into the railway right of way from 4 to 6 feet.   A large sign, located 117 feet west of the highway, interfered with his view. Besides these, the photographs show that the right of way was a narrow one, and that poles and trees were farther to the west.   From where he stood 10

feet from the track he could see from 100 to 150 feet to the west. Counsel argue that if plaintiff had stopped his motor when he stopped his car he, doubtless, could have heard the car approaching, and that if he had stopped further north he would have had a better view to the west. We think these are arguments that should be addressed to the jury. Because he failed to do those things it cannot be said, as a matter of law, that he was negligent (*Nichols* v. *Railway Co.*, 203 Mich. 372), although the jury might find that he was guilty of contributory negligence for having omitted to do those things. It all gets back to the question as to whether the plaintiff conducted himself as an ordinarily prudent man would have done under similar circumstances. It was clearly a question for the jury. 22 R. C. L. p. 1031.

The defendant requested the submission of the following special question to the jury, and complains because it was not given:

"Did the motorman, Buck, see the plaintiff's automobile north of the tree, as testified to by him?"

Had the question been submitted and answered in the affirmative, it would not have been inconsistent with the general verdict, because of the fact that Buck might have seen plaintiff's automobile in a certain position when plaintiff was unable to see him. The conditions of their viewpoint differed. Buck was up high on the car platform and plaintiff was very much nearer the ground. The condition of the foliage might have permitted Buck to see plaintiff and precluded plaintiff from seeing Buck or his car. We think there was no error in the refusal.

We have considered the other assignments, but find no reversible error in them. Many of the assignments involve the same questions that we have already considered. The case was very well submitted to the jury. It was made clear to them by the court what

the questions were for solution, and many of the court's suggestions were helpful to aid them in their solution.

The judgment of the trial court is affirmed.

SHARPE, SNOW, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.