238 F.2d 645
 Alice PATTERSON, Administratrix of the Estate of Harry G. Patterson, Jr., deceased, Appellant,
v.
PENNSYLVANIA RAILROAD COMPANY, a Pennsylvania Corporation, Appellee,
CITY OF DETROIT, a municipal corporation, Appellant,
v.
PENNSYLVANIA RAILROAD COMPANY, a Pennsylvania Corporation, Appellee.
 No. 12789.
 No. 12790.
 United States Court of Appeals Sixth Circuit.
 December 5, 1956.
 
 James A. Markle, Detroit, Mich., for Alice Patterson, Admx. etc.
 Frederick E. Byrd, Detroit, Mich., for City of Detroit.
 A. D. Ruegsegger, Detroit, Mich., Dyer, Meek, Ruegsegger & Bullard, Detroit, Mich., on the brief, for Pennsylvania R. Co.
 Before MARTIN, MILLER and STEWART, Circuit Judges.
 MARTIN, Circuit Judge.
 
 
 1
 In an action for damages for death by wrongful act, Alice Patterson, as administratrix of the estate of her deceased husband, Harry G. Patterson, Jr., was awarded $40,000 by the verdict of a jury and judgment was duly entered thereon against the defendant railroad company.
 
 
 2
 Upon conclusion of all the evidence in the case, the railroad company renewed its motion for a directed verdict made at the close of appellant's submission of evidence. The court reserved judgment on the motion and, in a comprehensive charge, submitted the case to the jury.
 
 
 3
 In addition to its general verdict, the jury, in answer to special interrogatories submitted at the request of the defendant, found that the bell of defendant's engine was not ringing and its whistle was not sounding as the train approached the Dey Street crossing, at which intersection a steamroller, owned by the City of Detroit and operated by appellant's decedent, was struck by the engine. Patterson died of injuries sustained in the collision. The jury answered further that appellant's decedent was performing duties which, in the course of his employment as a roller operator for the city, necessitated his presence in and about the crossing.
 
 
 4
 Nearly ten and one-half months later, the trial judge set aside the verdict of the jury and the judgment which had been entered thereon and rendered judgment notwithstanding the verdict in favor of appellee railroad company.
 
 
 5
 A separate action brought against the railroad company by the City of Detroit for damages to its steam roller was consolidated for trial with the Patterson case and resulted in a jury verdict in favor of the City for $1,000. The judgment entered on that verdict was set aside simultaneously with like action in the Patterson case, and judgment non obstante veredicto was entered in favor of the appellee railroad company. The appeals of the administratrix, Alice Patterson, and of the City of Detroit have been heard and considered together.
 
 
 6
 Our beginning point is the settled rule that, on a defendant's motion for directed verdict or on motion for defendant notwithstanding the verdict, the facts must be viewed in the light most favorable to the plaintiff and all conflicts in the testimony must be resolved in the plaintiff's favor. Brunswick-Balke-Collender Co. v. Foster Boat Co., 6 Cir., 141 F.2d 882; Thurkow v. City of Detroit, 292 Mich. 617, 291 N.W. 29.
 
 
 7
 We shall undertake to state succinctly the material facts. Appellant's decedent was in the employ of the City of Detroit as a roller operator of seven years' experience. He was attached to the city street-paving crew which, for several days prior to the accident, had been engaged in resurfacing three crossings. The Wabash Railroad Company, which owned the railroad tracks at the street crossings, had also worked a crew in repairing that portion of the street crossings located between the rails of the railroad tracks. The railroad crew had finished its work the day before Patterson met his fatal injuries. The city paving crew had been working at the crossing where the accident occurred for several days prior thereto.
 
 
 8
 Michigan law requires that, if heavy equipment is to be moved over railroad tracks, notice shall be given to the railroad company. Section 752.501, C.L. Mich.1948. The supervisor in charge of fixing gradings and sidewalks for the City of Detroit testified that notice had been given the Wabash Railroad (owners of the tracks) that the city was going to operate steamrollers at intersections, including that one where the fatal accident occurred. The train conductor testified, however, that the train crew of the Pennsylvania Railroad involved in the accident had been given no notice of the work being done at the crossing; and, indeed, did not know of it. The Pennsylvania Railroad was using the Wabash tracks. On the early morning of the accident, appellant's decedent took the steamroller from a point where it was parked on Gates Street and went through an alley between Gates and Dey Streets to Dey Street. This alley was some 170 feet north of the railroad tracks and ran parallel to them. As the steamroller entered Dey Street from the alley, a witness, William Fett, was coming north on Dey Street in a truck, used to pick up barricades which had been placed by the paving crew on the street the day before. Baylis and Smith, members of the paving crew, were putting the barricades into the truck. The truck driver exchanged greetings with appellant's decedent, who continued toward the railroad crossing. A few minutes later, the truck driver heard a crash.
 
 
 9
 The roller operated by Patterson had been struck by the Pittsburgh Express, a Pennsylvania Railroad passenger train which was running six or seven minutes ahead of schedule. Eleven members of the paving crew were within half a block of the railroad crossing at the time of the accident. All testified that they did not hear an engine bell or whistle as the train approached the crossing. Some were positive that they would have heard the whistle had it been blowing. Railroad employees testified that the whistle on the train was loud enough to be heard three or four blocks away. Both the engineer and the fireman testified that the bell was rung and that the whistle was sounded. Thus a jury question was presented as to whether the engine bell and whistle had in fact been sounded.
 
 
 10
 The Supreme Court of Michigan has held the testimony of several witnesses, though negative in character, that from positions at which they might have heard they did not hear crossing signals sounded, to be sufficient to carry the question to the jury. Cinadar v. Detroit, G. H. & M. R. Co., 193 Mich. 38, 49, 159 N.W. 312; Crane v. Michigan Central Railroad Co., 107 Mich. 511, 65 N.W. 527; Pennsylvania R. Co. v. Ackerson, 6 Cir., 183 F.2d 662, 665. In Grand Truck Western Ry. Co. v. Heatlie, 6 Cir., 48 F.2d 759, 760, this court said that it has never accepted the doctrine in effect in some jurisdictions that evidence of the failure of witnesses to hear train signals does not make a case for the jury as against positive and affirmative testimony that signals were given; pointed to our holding that "where a witness is in a position where he would normally hear, his failure to do so presents an issue as to the existence of the fact." Detroit Southern R. Co. v. Lambert, 6 Cir., 150 F. 555; and Baltimore & Ohio R. Co. v. O'Neill, 6 Cir., 186 F. 13, were cited. See also Grand Trunk Western Ry. Co. v. Collins, 6 Cir., 65 F.2d 875, 876.
 
 
 11
 We think there was sufficient substantial evidence of negligence on the part of the defendant here to require submission of that issue to the jury.
 
 
 12
 In disposing of motions of the defendant for judgments non obstante veredicto, the district judge held that appellant's decedent was guilty of contributory negligence as a matter of law, which precluded recovery in the action brought by the administratrix and also in that brought by the City of Detroit. Accordingly, the court decided that defendant, having been entitled to directed verdicts at the conclusion of all the evidence, would be upheld in its motion to set aside the judgments on the verdicts of the jury; and that judgments in its favor would be entered in accordance with its previous motion for directed verdicts.
 
 
 13
 Appellants aver that this action of the district court was erroneous. They say that the operator of a ten-ton street-paving roller, being used to pave approaches to an unprotected railroad crossing, was not guilty of contributory negligence as a matter of law, in being struck by a Diesel engine which gave no warning of its approach by sounding either a bell or a whistle. They emphasize the fact that the train was running ahead of schedule.
 
 
 14
 The record discloses evidence from which the jury could deduce that, at the time he was killed, appellant's decedent was required in doing his work to bring his steamroller close enough to the railroad tracks to be struck.
 
 
 15
 By agreement, the jury was taken to the scene of the accident and could ascertain the view which Patterson had from his operator's seat twelve or thirteen feet from the front of the roller. They observed a train go by on the same track. They were shown a roller identical with that being used by the decedent and could see its cumbersome size and method of operation. They could see that, in order to roll the surface next to the railroad track, the operator of the roller would have to extend a part of it onto the track. They could also observe that the operator had to look down in doing his work, and perhaps even to lean over in order to see the area which he was rolling. There was testimony that the pavement near the crossing appeared to have been re-rolled on the morning of the accident.
 
 
 16
 The trial judge stated in his opinion that "there was sufficient competent evidence to submit to the jury on the issue as to whether Patterson was working on the tracks"; but he said elsewhere in his opinion that the "same rule would apply at this unprotected crossing to a workman as to a pedestrian * * *"; and that, though not chargeable with negligence merely because he proceeded to the tracks under the circumstances, Patterson "assumed a much greater responsibility for his own protection and was then chargeable with a greater degree of care." We think this was unsound reasoning under the controlling Michigan authorities.
 
 
 17
 The established law in Michigan is that whether a workman has exercised due care for his own safety is a question for the jury to consider in relation to the character of work in which he is engaged and the attention which such work requires. See Reedy v. Goodin, 285 Mich. 614, 281 N.W. 377; Ebel v. Bruzewski, 296 Mich. 654, 296 N.W. 715 [in both these opinions, Mr. Justice McAllister, now a member of this court, concurred]; Mayala v. Underwood Veneer Co., 281 Mich. 434, 275 N.W. 198. In the first-cited case, supra [285 Mich. 614, 281 N.W. 379], it was held that "contributory negligence is ordinarily a question of fact for the jury, if there is one, unless the evidence so plainly and clearly establishes such contributory negligence that no reasonable man could come to any other conclusion." See also Jones v. Grand Trunk Western Ry. Co., 303 Mich. 114, 120, 5 N.W.2d 676.
 
 
 18
 In the Ebel case, supra, the court asserted that when a person is in a place where he should ordinarily use his sense of sight, he will not be barred recovery for injuries which he might have avoided if the surrounding circumstances are such as reasonably to distract his attention. Cf. Guggenheim v. Lake Shore & M. S. Ry. Co., 66 Mich. 150, 33 N.W. 161; Travis v. Eisenlord, 256 Mich. 264, 239 N.W. 304; Gaffka v. Grand Trunk Western R. Co., 301 Mich. 383, 3 N.W.2d 314; Grand Trunk Western Ry. Co. v. Collins, 6 Cir., 65 F.2d 875. Judge Allen, writing for this court, said in Pennsylvania R. Co. v. Ackerson, 6 Cir., 183 F.2d 662, 665: "As stated by the Supreme Court of Michigan, each grade-crossing case must depend upon its own facts and circumstances, for no two cases present exactly the same conditions." Ortynski v. Grand Trunk Western R. Co., 307 Mich. 61, 67, 11 N.W.2d 326; and Jones v. Grand Trunk Western R. Co., 303 Mich. 114, 118, 5 N.W.2d 676, were cited.
 
 
 19
 We have examined all Michigan authorities cited by appellee in its brief, including Rice v. Goodspeed Real Estate Co., 254 Mich. 49, 235 N.W. 814; Dahlerup v. Grand Trunk Western R. Co., 319 Mich. 96, 29 N.W.2d 156; Dulemba v. Tribble, 325 Mich. 143, 37 N.W.2d 894; and we find no compulsion in them requiring that a directed verdict in favor of defendant should have been granted in this case.
 
 
 20
 In an opinion of the Supreme Court of Michigan announced only a few weeks ago, Clark v. Shefferly, 346 Mich. 332, 335, 78 N.W.2d 155, 158, the opinion writer stated: "This is a simple case of averred negligence and freedom from contributory negligence presenting questions of fact only on the proof, and it is controlled so far as right to a directed verdict is concerned by common-law rules given in Detroit & Milwaukee R. Co. v. Van Steinburg, 17 Mich. 99." In a footnote, the opinion declares that the Michigan cases disclose disregard in recent years of the widely-quoted rules in the Van Steinburg opinion, and that the last occasion of direct reliance on them dates back to 1937 when Thompson v. Michigan Cab Co., 279 Mich. 370, 375, 376, 272 N.W. 710, 712, was decided. In the Thompson case, it was pointed out that the Van Steinburg opinion was written long ago [1868] by the distinguished Mr. Justice Cooley, who discussed at length a question as to when the trial court is warranted in instructing the jury that the plaintiff was guilty of negligence. The court said: "The law, as therein stated by Mr. Justice Cooley, has been so generally cited and quoted that we forbear from further repetition."
 
 
 21
 In the Van Steinburg opinion, supra, the eminent Michigan common-law jurist was at his best, the highest encomium which could be accorded him. His opinion is clear, scholarly and comprehensive. Recognizing the principle that, when a plaintiff offers no evidence that he was in the exercise of care but on the contrary the whole evidence on which his case rests shows that he was wanting in due prudence, a court may rightfully instruct the jury as a matter of law that the action cannot be maintained. Judge Cooley said: "The case, however, must be a very clear one which would justify the court in taking upon itself this responsibility." He reasoned that when the judge decides that a want of due care has not been shown he necessarily fixes in his own mind the standard of ordinary prudence; and, measuring the plaintiff's conduct by that, turns him out of court upon his own opinion of what a reasonably prudent man ought to have done under the circumstances. Thus he makes his own opinion of what generally would be regarded as prudence a definite rule of law.
 
 
 22
 Judge Cooley then pursues the subject, 17 Mich. 120-121: "It is quite possible that if the same question of prudence were submitted to a jury collected from the different occupations of society, and perhaps better competent to judge of the common opinion, he might find them differing with him as to the ordinary standard of proper care. The next judge trying a similar case may also be of a different opinion, and, because the case is not clear, hold that to be a question of fact which the first has ruled to be one of law. Indeed, I think the cases are not so numerous as has been sometimes supposed in which a judge could feel at liberty to take the question of the plaintiff's negligence away from the jury." After further discussion, the great legal authority said: "When the question arises upon a state of facts on which reasonable men may fairly arrive at different conclusions, the fact of negligence cannot be determined until one or the other of those conclusions has been drawn by the jury. The inferences to be drawn from the evidence must either be certain and incontrovertible, or they cannot be decided upon by the court. Negligence cannot be conclusively established by a state of facts upon which fair minded men may well differ."
 
 
 23
 Some of us have noted a modern tendency — perhaps a growing one — to give mere lip service to these sound principles. Trial by jury is our established constitutional safeguard against assumption of unwarranted judicial authority and should be honored by steadfast observance rather than discarded by dictatorial breach.
 
 
 24
 The district court committed reversible error in setting aside its previously entered judgment on the verdict of the jury in favor of plaintiffs and in entering judgment for the defendant notwithstanding the verdict.
 
 
 25
 In its order acting upon the respective motions of the railroad company, the district court denied the motion of the appellee for a new trial, saying that if, upon review, it should be determined that the court had erred in holding Patterson "contributorily negligent as a matter of law" the district court would not disturb "the jury's finding by substituting its own appraisal of the evidence for that of the jury."
 
 
 26
 On this appeal, it is urged by appellee that, under the procedure outlined in Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147, this appellate court should consider the questions raised in appellee's alternative motion for a new trial (denied by the trial court) in the event of reversal of the judgment entered non obstante veredicto in the district court. In our opinion, the authority depended upon is not as clearly supportive of appellee's position as appellee seems to take for granted. In the Montgomery Ward case, the district court had not as in the instant case acted upon the alternative motion for a new trial. There, the cause was remanded to the district court to hear and rule upon the motion for a new trial. Certain dicta in the opinion, however, would seem to bear out appellee's contention, 311 U.S. 254, 61 S.Ct. 195: "The judgment on the verdict may still stand, because the appellate court may reverse the trial judge's action. This being so, we see no reason why the appellee may not, and should not, cross-assign error, in the appellant's appeal, to rulings of law at the trial, so that if the appellate court reverses the order for judgment n. o. v., it may pass on the errors of law which the appellee asserts nullify the judgment on the verdict."
 
 
 27
 Assuming, but not deciding, that in the state of the present record — the appellee having filed no cross-appeal — the opinion in the Montgomery Ward case requires us to consider the errors assigned by the appellee in its briefs, we find no reversible error in the rulings of which complaint is made.
 
 
 28
 Appellee avers that the trial judge erred in receiving in evidence a report in writing made by its train conductor which stated, among other things, that the "roller was being used in making repairs to approaches on crossing when accident occurred." The argument is that this was substantive evidence based on hearsay and conjecture. It is true that the highest Michigan court has held that a report made by a patrolman concerning a personal injury action which he did not witness was properly excluded from evidence. Goosen v. Packard Motor Car Co., 174 Mich. 654, 140 N.W. 947; Sterling v. City of Detroit, 134 Mich. 22, 95 N.W. 986. It is also the law of Michigan that the admissions of an agent are evidence against the principal only when constituting a part of the res gestae. Converse v. Blumrich, 14 Mich. 109; Mott v. Detroit, G. H. & M. R. Co., 120 Mich. 127, 79 N.W. 3; Bernard v. Grand Rapids Paper Box Co., 170 Mich. 238, 136 N.W. 374, 42 L.R.A.,N.S., 930.
 
 
 29
 It must be borne in mind that the train conductor — while he did not actually see the collision — was sitting in the sixth car from the head end of the engine. After the collision, he left the train immediately to investigate the accident, and saw the steamroller and the locale of the accident. However, his testimony showed that, while investigating the accident on the spot, he had been told that the roller operator was rolling up and down on the edge of the tracks. His report based on these hearsay statements would, of course, not be admissible in evidence; but, after all, the evidence was merely cumulative. As stated by the district judge: "There was sufficient independent evidence from which the jury could find that Patterson was working on the tracks at the time the roller was struck by the train." The testimony of LeZotte, supervisor in charge of the roller operators, alone made that apparent. He testified that he was at the crossing twenty minutes after the accident and could tell from markings in the pavement that the pack had been recently rerolled. The admission of the quoted statement from the conductor's long detailed report was, at most, harmless error in the light of the entire record in the case.
 
 
 30
 In considering the overall circumstances of this case, it should be remembered that the jury had viewed the scene of the accident; and this record does not and could not reveal the impressions made upon the minds of the jurors from such survey. This being true, it is a reasonable assumption that the physical situation observed by them supported the conclusions which they drew with respect to the issues of both negligence and contributory negligence.
 
 
 31
 We fail to find reversible error in the charge of the court as given, or in its refusal to give certain special instructions requested by the appellee. Viewing the charge in entirety, we think that it adequately, correctly and fairly covered the applicable law.
 
 
 32
 Accordingly, the judgments of the district court notwithstanding the verdicts of the jury entered October 15, 1955, are reversed; and the judgments of the district court entered on the verdict of the jury on November 24, 1954, in favor of plaintiffs, are ordered to be reinstated.