John McVICKER, Plaintiff-Appellee,
and
George F. Alger Company, Intervenor
Plaintiff-Appellee,
v.
CHESAPEAKE AND OHIO RAILWAY
COMPANY, Defendant-Appellant.

No. 14574.

United States Court of Appeals
Sixth Circuit.
Aug. 29, 1962.

Robert A. Straub, Detroit, Mich., for defendant-appellant, James R. Gannon, Detroit, Mich., on the brief.

Harry M. Philo, Detroit, Mich., for plaintiff-appellee, Goodman, Crockett, Eden, Robb & Philo, Detroit, Mich., on the brief.

Kenneth C. Davies, Detroit, Mich., for intervenor-plaintiff-appellee, Davies & Moesta, Detroit, Mich., on the brief.

Before MILLER, Chief Judge, O'SULLIVAN, Circuit Judge, and BOYD, District Judge.

SHACKELFORD MILLER, Jr., Chief Judge.

This action was filed in the District Court by the plaintiff-appellee against

the Chesapeake and Ohio Railway Company to recover damages for personal injuries suffered by him when a tractor trailer which he was driving was hit at a railroad crossing on a public highway in Indiana by a train being operated by the defendant. The parties will be referred to as they were in the District Court.

The material facts leading up to the accident are briefly stated as follows.

Plaintiff was employed by George F. Alger Company as a truck driver and was assigned to a daily trip from Chicago, Illinois, to Three Rivers, Michigan, and return, which was a normal ten-hour run. He had been so employed for approximately two years before the accident. In making this run plaintiff was required to use Highway U. S. 20 in each direction. U. S. 20 is a paved four-lane highway, approximately forty feet wide, running in a generally eastwardly and westwardly direction a few miles south of Michigan City, Indiana. Defendant Railroad Company's tracks, running from Grand Rapids, Michigan, to Chicago, Illinois, consist of a single set of tracks which run in a generally northeastwardly and southwesterly direction and cross U. S. 20 near Michigan City. Defendant maintained standard flasher signal lights at the crossing about ten feet back from the rail. There was also erected at the crossing at a point before reaching the flasher signal a standard advance highway warning sign advising the traveling public that a railroad crossing was ahead. There were no gates or watchman at the crossing.

Plaintiff left Chicago at 9 A.M. on Saturday, February 15, 1958, driving a tractor trailer to Three Rivers, Michigan. At Three Rivers he dropped the trailer with the freight from Chicago and picked up a trailer to take back to Chicago. A heavy snow storm, characterized by at least one witness as a blizzard, commenced some time on Saturday, February 15, and continued with such severity that after it had subsided on Monday it was reported as the worst storm in the history of Michigan City. The brunt of the storm was confined to an area around Michigan City approximately 25 miles long and from 5 to 7 miles wide. About 9 o'clock that night plaintiff had crossed the Michigan State line into Indiana. He stopped at the Cloverleaf Garage, which was on U. S. 20, where his company had a charge account and where sleeping facilities were available. He called the company's dispatcher in Chicago and told him that the weather was bad and that he was going to get off the highway. The dispatcher told him, "Tomorrow, when you see that the weather is fit and you feel that you can make it, you continue on your way." Plaintiff stayed at the Cloverleaf Garage until about 10 o'clock Sunday morning. After breakfast he watched the traffic for a little while and when he saw that the traffic was moving he decided to leave. The Cloverleaf Garage was about a mile and a half from the scene of the accident. About four feet of snow had fallen, but a bulldozer cleared a way so that the trucks could get out of the truck yard on to the highway. It was still snowing and blowing, and as described by the plaintiff "you couldn't see your hand in front of you at times." There was heavy traffic moving very slowly on U. S. 20. It took the plaintiff approximately two hours and fifteen minutes to travel the one and one-half miles to the crossing. Plaintiff finally reached a point where he could go no further because traffic ahead of him as far as could be seen had completely stopped due to a truck getting crossways on U. S. 20. Plaintiff came to a final stop with his trailer about half way over the railroad track, in which position it remained until struck by the defendant's train at least some ten or fifteen minutes later. During this period of time the plaintiff remained in the cab of his trailer. He testified that because of the heavy snow and weather conditions he did not see the railroad track and did not know he was on it, nor did he see any of the warning signals at the track or hear the whistle or approach of the train.

Defendant's train left Grand Rapids, Michigan, for Chicago, Illinois, on the

morning of February 16, 1958. The train consisted of one diesel engine and forty-five freight cars. There was no storm or snow conditions at Grand Rapids, Michigan, at that time. It made a stop at New Buffalo, Michigan, where there was one or two inches of snow. As it proceeded westwardly the weather conditions became increasingly worse, until the train was running through the storm in the Michigan City area. As it approached the crossing it was running at a speed of approximately 35 miles per hour and sounded its crossing whistle. The headlight on the train was lighted and on bright. The flasher signals at the crossing were in operation. On account of the poor visibility, plaintiff's trailer standing over the crossing was first observed at a distance of 250 to 300 feet northeast of the crossing, at which time the emergency brakes were applied. In answer to the question why he couldn't see it sooner, defendant's engineer said, "Well, it was so blustery you just couldn't see, so much snow and blowing that you just couldn't see any further than that. And then it would clear for a second and then again you couldn't see." The conductor testified that visibility was from zero to half a mile, depending on how the wind was blowing. He said, " * * * the wind would let up and you could see, and all of a sudden, swoosh, she would come, and you couldn't see 50 feet." He estimated the temperature at about zero. The train struck the trailer and continued on until it stopped with the engine located approximately 300 feet south of U. S. 20.

The George F. Alger Company intervened in the suit as an additional plaintiff. The defendant, in addition to filing answers denying negligence on its part and alleging contributory negligence on the part of the plaintiff, asserted a counterclaim for damages sustained by it as a result of the accident. The jury returned a verdict in favor of the plaintiff in the amount of $25,000.00 and in favor of the intervenor, the George F. Alger Company, in the amount of $10,479.20.

Defendant's motion to set aside the jury verdicts and enter judgments in its behalf and to also enter judgment in its behalf on its counterclaim were overruled. This appeal followed.

■ The defendant contends that the District Judge was in error in overruling its motion for a directed verdict, made at the close of plaintiff's case and renewed at the close of the whole case, in that (1) the evidence was insufficient to take the case to the jury on the issue of defendant's negligence, and (2) the uncontradicted evidence showed that the plaintiff was guilty of contributory negligence as a matter of law.· Since jurisdiction is based upon diversity of citizenship and the amount involved, the law of Indiana, in which state the collision occurred is applicable.

■ With respect to the negligence of the defendant, the evidence was uncontradicted that there were crossarm warning signs and flasher lights at the crossing, the flasher lights were operating properly, the headlight of the engine was on and the whistle was properly blown for the crossing, thus constituting compliance with all statutory requirements. The speed of the train was not in excess of any statutory provision. However, we do not agree with defendant's contention that this, as a matter of law, removed the question of defendant's negligence from the case. Although speed, in and of itself, is not negligence under Indiana law, New York Cent. Ry. Co. v. Powell, 221 Ind. 321, 47 N.E.2d 615, we think that speed, considered in connection with certain existing circumstances, may be evidence of negligence. For example, driving an automobile thirty-five miles an hour on a super highway at a time when traffic is light would not be considered negligence, but the driving of that same automobile at that same speed through the downtown streets of any metropolitan city at the peak hour of late afternoon traffic, would certainly be evidence of negligence, if not negligence as a matter of law. Compliance with all statutory requirements will not in all cases, under any circumstances, ab-

solve one of negligence. Grand Trunk Railway Co. of Canada v. Ives, 144 U.S. 408, 419–422, 427, 12 S.Ct. 679, 36 L.Ed. 485; Freeman v. Railway Co., 74 Mich. 86, 41 N.W. 872, 3 L.R.A. 594. As was said by the Supreme Court in the Grand Trunk Railway Co. case (144 U.S. at p. 417, 12 S.Ct. at p. 682), "There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances. The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case, may, under different surroundings and circumstances, be gross negligence. * * * When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them, that the question of negligence is ever considered as one of law for the court." In the present case, we think the District Judge was not in error in leaving it to the jury to decide whether it was negligence on the part of the defendant to operate its train at 35 miles an hour over a heavily traveled highway crossing under such extreme weather conditions as made it difficult for a motorist to avoid traffic congestion and extremely difficult for him to see the statutory warning signals, which under ordinary conditions would give adequate warning of the existence of the crossing.

■ With respect to the issue of contributory negligence, we think it is clear under Indiana law and under the usual principles of contributory negligence that unless plaintiff can show a valid excuse for placing his trailer across the railroad tracks and remaining in the tractor until it was struck, he was guilty of contributory negligence as a matter of law, which would bar a cause of action on his part. New York Cent. R. Co. v. Casey, 214 Ind. 464, 14 N.E.2d 714, 717; Chesapeake & O. Ry. Co. v. Williams, 114 Ind.App. 160, 51 N.E.2d 384; Moss v. Pennsylvania R. Co., 146 F.2d 673, 677–678, C.A.7, cert. denied, 325 U.S. 861, 65 S.Ct. 1200, 89 L.Ed. 1982; Kallmerten v. Cowen, 111 F. 297, C.A.6. In the Moss case, which involved Indiana law, the Court pointed out that the accident was caused because the plaintiff failed to look and therefore failed to see the oncoming train. It said, in reversing a judgment against the railroad company, "He should have looked. He must be charged with the information which he would have received had he looked."

Plaintiff seeks to avoid this fundamental rule by claiming that on account of the extreme weather conditions, he could not see the warning signs and did not know he was on the railroad track. His own testimony was that if he had known he was on the railroad track he could have pulled forward and to the side of the stopped cars directly in front of him and pulled the trailer off of the track. The question resolves itself into whether his failure, because of the extreme weather conditions to see the warning signs and to realize that the trailer was standing on the track excused him from the performance of his duty to look out for his own safety.

In considering this question, it should be kept in mind that the severe weather conditions which the plaintiff encountered were not of the kind that came upon him unexpectedly and which could not be avoided. Plaintiff was in a place of safety, which he voluntarily left to start his journey, well knowing the hazardous conditions he would encounter. He knew that at least four feet of snow had fallen on the highway and that it was snowing and blowing when he started out. He did not know whether the highway had been plowed. He needed the assistance of a bulldozer to get out of the parking lot. He assisted a friend whose machine had become stuck in the snow. In doing so, he became stuck himself. Neverthe-

less, he drove his tractor and trailer on to the highway to make the trip back to Chicago.

Plaintiff testified that the weather conditions were "extremely hazardous," that it was snowing so hard and blowing so hard he couldn't see any highway signs at all, or even a turn-off road not far from the scene of the accident; that when he pulled on to U. S. 20 the traffic was just "stop and go;" that "you couldn't see your hand in front of you at times; and it would leave off and come on again, but you could never see over twenty-five or thirty-five feet;" that for a period of about two years he had been driving over this same highway and over this same crossing "just about every day;" that he was familiar with the general vicinity and knew there was a railroad track "in the area," although he didn't know exactly where it was; but as he was sitting in the truck, raising the window up and down he saw a crossarm but didn't know whether it was in front of him or in back of him, or if the track was in front of him. In answer to the question, "How long before the moment of impact did you see the crossarms for the first time?", he said, "Oh, it just seemed like a minute. It seemed like a minute, and I took my eyes off that to look around, and that it (sic) just before the crash took place."

There was testimony about another motorist who about five or ten minutes before the accident realized he was crossing the track and would not stop until he cleared them. Mr. and Mrs. Rochman were in a car which was in the stalled line of traffic ahead of the plaintiff. Mrs. Rochman, who was seated in the right rear seat with the window open, heard the whistle or the bell and was conscious that a train was coming. She told her husband that the plaintiff's truck was on the crossing behind them. Mr. Rochman, who had been in and out of his car during the forty-five or more minutes before the accident, heard the whistle, saw the approaching train and after assuring himself that his own car was off the track started running and waving

to the plaintiff to get out of his cab until, for reasons of his own safety, he turned around and ran away from the place of impact. There was uncontradicted evidence that the whistle was blowing for approximately a minute before the accident and that the flasher signals were on for a little less than a minute. Two truck drivers, who were parked behind the plaintiff and were sitting in the cab of one of the trucks, heard the whistle, got out of the cab and saw the flasher signals. One of them testified that he heard the whistle approximately sixty seconds before the accident and saw the approaching train probably thirty seconds before the accident.

In Reynolds v. Baltimore & Ohio R. Co., 185 F.2d 27, C.A.7, involving Indiana law with respect to a collision between a motorist and a railroad locomotive, the Court held that the plaintiff was guilty of contributory negligence, barring recovery as a matter of law, in failing to see and heed highway signs warning of the crossing and to operate and control his automobile so that he could stop it within the range of his vision. In that case it was contended that it was dark, the weather was drizzly and misty and visibility was poor. The Court said, "Indiana cases hold that it is negligence as a matter of law for a motorist to operate his vehicle on a highway under such conditions that he cannot see and heed warning signs erected and maintained for the protection of persons using the highways," citing New York Cent. R. Co. v. Casey, supra, 214 Ind. 464, 14 N.E.2d 714, and Opple v. Ray, 208 Ind. 450, 195 N.E. 81. The Court quoted with approval the following statement from Cleveland, C. C. & L. R. Co. v. Houghland, 44 Ind.App. 73, 85 N.E. 369, 88 N.E. 623, "If rain interfered with the normal opportunity to observe these signals or danger, it was his duty to take cognizance of the fact and to use his senses in a manner reasonably calculated to inform him of approaching danger. He was not free to drive blindly into a place of known danger." See also: Pitcairn v. Honn, 109 Ind.App. 428, 32 N.E.

2d 733; Cummins v. Erie R. Co., 63 F.2d 816, C.A.6. Although plaintiff knew there was a railroad crossing in the area in which he was, he stayed in his cab and made no effort to ascertain where it was or if it was a possible source of danger. Drivers of other cars, stalled at the same location, were able to get out of their machines and did so, and in so doing were apprised of the crossing and of the approaching train. See: Miller v. Baltimore & O. R. Co., 139 F.2d 219, C.A.3; Horn v. Baltimore & O. R. Co., 54 F. 301, 306, C.A.6. We are of the opinion that the District Judge should have sustained defendant's motion for a directed verdict on the ground that plaintiff was contributorily negligent as a matter of law.

The judgment is reversed and the action remanded to the District Court with instructions to dismiss the actions of the plaintiff and the intervenor-plaintiff and the counterclaim of the defendant.