Teresa **SERRATONI**, as Administratrix of the Estate of Lois Jane Zatek, Deceased, Plaintiff and Appellant,

v.

The **CHESAPEAKE AND OHIO RAILWAY COMPANY**, a foreign corporation, Defendant and Appellee.

Eugene **LUDWIG**, as Guardian of the Estate of Richard Paul Zatek, a minor, Teresa Serratoni, as Administratrix of the Estate of Joan Ellen Zatek, Deceased, Teresa Serratoni, as Administratrix of the Estate of John Michael Zatek, Deceased, John Zatek and Wolverine Insurance Co., a Michigan corporation, as subrogee of John Zatek, Plaintiffs and Appellants,

v.

The **CHESAPEAKE AND OHIO RAILWAY COMPANY**, a foreign corporation, Defendant and Appellee.

Nos. 15450, 15451.

United States Court of Appeals Sixth Circuit.

June 23, 1964.

Frederick D. Jasmer, Detroit, Mich., Cassese, Batchelder, Jasmer & Evanski, Detroit, Mich., on brief, for appellants.

Robert A. Straub, Detroit, Mich., James R. Gannon, Detroit, Mich., on brief, for appellee.

Before MILLER, PHILLIPS and EDWARDS, Circuit Judges.

EDWARDS, Circuit Judge.

These appeals arise out of a tragic grade crossing accident where a mother and three of her children were in an automobile when it stalled on The Chesapeake & Ohio Railway tracks in the path of an 80-car freight train. The train crushed the car; killed the mother, who was driving; killed two of her children, and injured the third. These suits for wrongful deaths and injury were filed by representatives of the estates of the three deceased persons and the injured minor in the United States District Court for the Eastern District of Michigan, Southern Division, jurisdiction being established by diversity of citizenship.

At trial a Federal court jury in Detroit returned verdicts for the defendant in the driver's case, and for the plaintiffs in the case of the passengers. The jury verdicts for plaintiffs were set aside by the United States District Judge, and judgments non obstante veredicto were entered for defendant. Plaintiffs appealed in all cases, with the children's cases consolidated into one appeal.

The accident occurred at 4:30 p. m., June 16, 1961, on Middle Belt Road at the five-track C & O grade crossing in the City of Livonia. The crossing protection consisted of flasher signals and automatic short-arm gates. The train was a three-engine diesel pulling defendant's daily unscheduled freight train No. 52, consisting of 79 cars and a caboose, and approaching Detroit from the west.

The deceased driver, Mrs. Zatek, and her three children were in a station wagon headed south on Middle Belt Road. As she approached the crossing an automatic switch, located 3,018 feet west of the crossing, was actuated by the freight engine and the flashers commenced and the gates began to come down. The exact relationship of these events to Mrs. Zatek's progress are in dispute. But three eyewitnesses all indicated that her car passed the gate and came to a stop on the track after the gate had started down.

Testimony also established that Mrs. Zatek and her children remained in the station wagon directly in the path of the oncoming freight train until the crash occurred—a matter of twenty seconds or more.

Witnesses testified that during these intervening seconds Mrs. Zatek appeared to be turning the ignition key as if to attempt to start the motor; that the car "bucked" or "jerked" but did not move out of position. One witness thought he saw "puffs of exhaust."

A part of this tragic story is undisputed evidence that Mrs. Zatek had been driving an automobile for a period of only two weeks and was driving on a temporary driver's permit at the time of the fatal crash.

Estimates of the speed of the train varied from 55 m. p. h., by the train engineer, to 67 m. p. h., based on computations by plaintiffs' expert witness, a mechanical engineer. An eyewitness to the collision, an automotive test development engineer, testified that the train was going 65 m. p. h. This same witness stated that he did not observe any noticeable deceleration of the train until after the moment of impact.

Plaintiffs' expert witness, however, also testified that he had inspected the tachometer of this train, which kept a running speed tape, and that it showed a speed of 59 m. p. h.

Although the engineer and fireman involved were in the courtroom during the trial, they were not called on to testify by either party. However, plaintiffs' attorney on direct examination elicited the following from the first police officer who reported to the scene:

"Q. Did you ask the engineer what happened?

"A. Yes.

"Q. Did he make a statement to you as to what occurred?

\* \* \* \* \* \*

"A. He stated that he whistled at the whistle post, which is approximately 1350 feet west of the inter-

section, and that he applied full emergency brake while he was about three car lengths east of that whistle post, which would be approximately 1200 feet west of the crossing. The train stopped about a half a mile east of the crossing."

Plaintiffs also presented an expert witness who testified that by his measurements the lead engine stopped 2,632 feet east of and past the intersection, and assuming a 60 m. p. h. speed, he calculated that the brakes had been applied 954 feet west of the crossing.

The evidence disclosed that the train crew on the fatal sunny afternoon had a straight and clear view of the crossing from as far away as 5,000 feet.

The crossing is located in Livonia, Michigan, a suburb adjacent to and northwest of Detroit. In 1960 its population was 66,700, an increase of 49,200 over the 1950 census figure.

The area surrounding the crossing houses a number of industrial and commercial sites, as well as a large residential area one-half mile from the crossing.

A traffic count taken shortly after the accident showed that 27,493 vehicles a day passed over this highway at a point located one-half mile south of this crossing.

In the general area of the crossing are found a grocery warehouse and store, an automotive laboratory, a building supply store, and a feed store. A large racetrack and parking area therefor is nearby, as is an automobile production plant and a large shopping center. Traffic from these sites is serviced by the four-lane highway in question. The crossing itself was described by the police officer witness as "pretty much open." On the afternoon of the accident the racetrack was in operation, and witnesses described traffic as "fairly crowded"—"fairly heavy."

Under state regulation the railroad had been required six years before this accident to install automatic short-arm gates and flasher signals at this crossing, in addition to the regular cross-buck railroad crossing signs.

In this case it is undisputed that all the warning and protective devices required by law and specified by the Public Service Commission were operating properly on the date of the fatal accident. This included the air horn on the diesel engine, which all of the witnesses testified to hearing blow.

On these facts the trial judge denied a motion for directed verdicts, holding that there were issues of fact which established jury questions both as to defendant's negligence and the driver's contributory negligence.

He charged the jury to consider the plaintiffs' negligence claims under only two issues:

"The only grounds now relied on by plaintiffs to establish negligence on the part of the defendant, as I have already mentioned, are, first, that the defendant railroad operated its train at an excessive speed and, second, that the engine crew for whose acts the defendant is responsible failed to keep a proper and adequate lookout for traffic on Middle Belt Road.

"The plaintiffs do not now claim any failure on the part of the defendant railroad in maintaining or operating adequate and required traffic protection devices at the crossing, including the timing of such devices, and, therefore, I instruct you to disregard any testimony with respect thereto.

"There was no statute or city ordinance placing a speed limit on the train involved in this collision on June 16, 1961, but, nevertheless, under the law, the train must be run at a reasonable speed and with that degree of care and prudence required for the safety of the lives and property of those engaged in the operation of the train by the railroad and also of those persons likely approaching and traveling over the crossing.

"What is a reasonable speed depends on the nature of the crossing

and other circumstances of the case. The rate of speed that would be entirely safe under some conditions may, however, be improper under other conditions, and it is for you as judges of the facts to determine whether or not the speed which the train was operated at this crossing was negligent under all the circumstances in this case, such as the nature of this crossing on the day and at the time of this collision, including the length of warning time provided to motorists by the timing pattern or gates and flashers.

"There is a duty on the part of the train crew to keep a proper lookout in the case of an approach to a public crossing. The lookout must be one as is reasonable and proper under all the circumstances involved at the time and place involved, including the speed of the train and such conditions as may then exist at the crossing."

He also charged as to the nature of contributory negligence and its applicability in the driver's case, and its inapplicability under Michigan law to the cases of the minor children passengers.

He also charged that there was no state statute or ordinance of the City of Livonia which imposed a legal speed limit upon defendant's trains at the crossing in question.

As we have noted, the jury returned a verdict for the defendant railroad as to the first case brought by the administratrix of the estate of the deceased driver-mother. It also returned verdicts totaling $56,000 in the children's cases—most of this sum being awarded for the benefit of the seriously injured surviving child.

Subsequently, plaintiffs moved for a new trial in the mother's case, and the defendant moved for judgments non obstante veredicto in the children's cases.

As we have noted, the District Judge denied plaintiffs' motion for new trial and granted defendant's motions for judgments non obstante veredicto.

On appeal plaintiffs complain about various provisions in the Judge's charge to the jury, including his recital of the Michigan state statute [1] requiring automobile drivers to stop when a warning signals the approach of a train, and his mention of the fact that there was neither a state nor city speed limit applicable to the crossing in question.

■ We find no error in these portions of the charge and no prejudicial error in the charge as a whole. Taken as a whole, we believe that it was a statement of the applicable law of the state of Michigan which was fair to both parties.

■ The jury could have concluded from the facts before it that this unfortunate mother—and brand new driver—became panic-stricken as a result of proximity to the railroad crossing when the bells and flashers were actuated; and failing to stop before the crossing, actually did stop and stall her car squarely upon the defendant's tracks and in the path of the approaching train. We have no doubt that such facts and inferences could properly have convinced the jury that her contributory negligence barred this claim.

The problems posed by the other appeals require somewhat more discussion. Four months after trial the District Judge set the verdicts in the children's cases aside in a careful and lengthy opinion [2] in which he held that his reexamination of the record and the law indicated no negligence on defendant railroad's part as a matter of law. His opinion recites respectable precedent for his ruling both from Michigan case law and that of other jurisdictions. But our ultimate conclusion is that the weight of authority requires sustaining all of the jury verdicts.

1. Mich.Comp. Laws of 1948, § 257.667, Mich.Stats.Anno. § 9.2367.

2. Ludwig v. Chesapeake & Ohio Railway Co. (Serratoni v. Chesapeake & Ohio Railway Co.), 229 F.Supp. 61 (E.D.Mich. 1962).

Since the accident happened in Michigan, our primary concern is with Michigan law. Under Michigan law the contributory negligence of the mother-driver cannot be imputed to the children passengers. Bricker v. Green, 313 Mich. 218, 21 N.W.2d 105, 163 A.L.R. 697 (1946).

Further, Michigan law does not favor directed verdicts or judgments entered by the trial judge notwithstanding the verdict of a jury. Justice Cooley enunciated this principle in Detroit & Milwaukee Railroad Co. v. Van Steinburg, 17 Mich. 99, 120: "The case, however, must be a very clear one which would justify the court in taking upon itself this responsibility." This view has been reiterated and followed many times: Carver v. Detroit & Saline Plank Road Co., 61 Mich. 584, 28 N.W. 721 (1886); Stowell v. Standard Oil Co., 139 Mich. 18, 102 N.W. 227 (1905); Burghardt v. Detroit United Railway, 206 Mich. 545, 173 N.W. 360, 5 A.L.R. 1333 (1919), and reemphasized in recent years: Kaminski v. Grand Trunk Western Railroad Co., 347 Mich. 417, 79 N.W.2d 899 (1956); Ware v. Nelson, 351 Mich. 390, 88 N.W.2d 524 (1958); Patterson v. Pennsylvania Railroad Co., 238 F.2d 645 (C.A.6, 1956).

In this last case reversing a directed verdict in a Michigan grade crossing accident, Judge Martin quoted Justice Cooley further, and added a comment:

"[T]he great legal authority said: 'When the question arises upon a state of facts on which reasonable men may fairly arrive at different conclusions, the fact of negligence cannot be determined until one or the other of those conclusions has been drawn by the jury. The inferences to be drawn from the evidence must either be certain and incontrovertible, or they cannot be decided upon by the court. Negligence cannot be conclusively established by a state of facts upon which fair minded men may well differ.'

"Some of us have noted a modern tendency—perhaps a growing one—to give mere lip service to these sound principles. Trial by jury is our established constitutional safeguard against assumption of unwarranted judicial authority and should be honored by steadfast observance * * *." Patterson v. Pennsylvania Railroad Co., supra, 238 F.2d at 650.

Finally, in terms of general legal principle, Michigan law requires us, when reviewing the grant of judgment for defendant notwithstanding a jury verdict for the plaintiff, to view the conflicting facts and inferences from the point of view favorable to plaintiff—this being the point of view which was accepted by the jury. Ware v. Nelson, supra; Cabana v. City of Hart, 327 Mich. 287, 42 N.W.2d 97, 19 A.L.R.2d 1333 (1950).

The trial judge submitted this case to the jury on issues of defendant's speed and lookout. As to the first of these issues it should be noted that Michigan is a leading authority in relation to the rule that whether or not the speed of a train was negligent, in view of all the surrounding facts and circumstances, is generally a question for the jury. Holdings to this effect may be found stretching from 1885 down to 1957. They include Klanowski v. Grand Trunk Railway Co., 57 Mich. 525, 24 N.W. 801 (1885); Block v. Ann Arbor Railroad Co., 202 Mich. 341, 168 N.W. 526 (1918); Hudson v. Grand Trunk Western Railway Co., 227 Mich. 1, 198 N.W. 339 (1924); Morgan v. Detroit, Jackson & Chicago Railway Co., 234 Mich. 497, 208 N.W. 434 (1926); and Davis v. New York Central Railroad Co., 348 Mich. 262, 83 N.W.2d 271 (1957).

In fact, the general rules on this topic, as set forth in several recognized law encyclopedias, cite Michigan case law first in support thereof. Thus, American Jurisprudence relies on the Morgan and Hudson cases, supra, for this proposition:

"It is generally held that it is for the jury to determine whether or not the speed at which a train was

operated was negligent under all the circumstances." 44 Am.Jur. Railroads § 456, at 686.

And the American Law Reports Annotated, in an annotation entitled "Negligence—Speed of Train at Crossing" cites the general rule thus:

"The general rule is that the question whether speed constitutes negligence depends upon all the circumstances of the particular case, and that whether the circumstances of the case establish a negligent rate of speed is a question for the jury." 154 A.L.R. 212, 258, citing: Klanowski v. Grand Trunk Railway Co., supra; Ommen v. Grand Trunk Western Railway Co., 204 Mich. 392, 169 N.W. 914 (1918); Fillingham v. Detroit, Grand Haven & Milwaukee Railway Co., 207 Mich. 644, 175 N.W. 227 (1919), (followed in Stahl v. Michigan Central Railroad Co., 227 Mich. 469, 198 N.W. 881 (1924)); Morgan v. Detroit, Jackson & Chicago Railway Co., supra.

■ There is, however, a recognized exception to this rule which appears to hold that as a matter of law high speed operation of a train over a rural crossing is not negligence, absent some unusual circumstances. The leading Michigan cases in exemplifying this exception are Buchthal v. New York Central Railroad Co., 334 Mich. 556, 55 N.W.2d 92 (1952); Elias v. Collins, 237 Mich. 175, 211 N.W. 88, 52 A.L.R. 1118 (1926); Shufelt v. Flint & Pere Marquette Railroad Co., 96 Mich. 327, 55 N.W. 1013 (1893), and Robinson v. Flint & Pere Marquette Railroad Co., 79 Mich. 323, 44 N.W. 779 (1890) which the District Judge quoted and relied upon in setting aside these verdicts.

■ On this record, however, we cannot agree that Buchthal (or like cases) is applicable law. On the view of the facts favorable to plaintiffs, we deal with a train speed of 60 to 70 m. p. h. approaching a crossing over a busy highway in a populous city in a major metropolitan area with traffic problems complicated by near-by plant and racetrack operations. This can hardly be regarded as a rural crossing case. As to the nature of the crossing, we believe there was ample evidence to support the submission of the speed issue to the jury.

A separate issue is posed, however, by those cases relied upon by the District Judge which are cited for the holding that where a railroad has complied with all statutory requirements for warning, then speed of the train is not negligence as a matter of law. Markar v. New York, N. H. & H. R. Co., 77 F.2d 282 (C.A.2, 1935); Engberg v. Great Northern Railway Co., 207 Minn. 194, 290 N.W. 579, 154 A.L.R. 206 (1940); Conner v. Pennsylvania Railroad Co., 163 F.Supp. 718 (E.D.Pa.1958), aff'd, 263 F.2d 944 (C.A. 3, 1959). None of these are Michigan cases. No one of the three cases involved an automobile stalled on the tracks. And in sum total, the three hardly do more than illustrate the fact that on different facts, courts tend to reach different conclusions.

The Engberg case (from Minnesota) parallels the Michigan rural crossing rule which we have just discussed and held not applicable. The Markar case does say that under the facts of that case the speed of the train should not have been submitted to the jury as a negligence question. But the third citation, the Conner case, was a case wherein the Third Circuit affirmed a jury award (for the defendant) specifically approving the trial court instruction which submitted both speed and warning as issues for jury consideration. Conner v. Pennsylvania Railroad Co., supra.

Still dealing with the law of other states, we find many stalled automobile cases holding that the speed of the train is generally a factor for jury consideration under all the circumstances of the case. Herrera v. Southern Pacific Co., 155 Cal.App.2d 781, 318 P.2d 784 (1957); Florida East Coast Railway Co. v. Schweida, 151 So.2d 665 (Fla.App.1963); Atlantic Coast Line Railroad Co. v. Parker, 90 Ga.App. 251, 82 S.E.2d 706 (1954); Campbell v. Patton, 227 Md. 125, 175

A.2d 761 (1961); Chicago, Rock Island and Pacific Railroad Co. v. Hugh Breeding, Inc., 232 F.2d 584, 247 F.2d 217 (C.A.10, 1957), cert. denied, 355 U.S. 880, 78 S.Ct. 138, 2 L.Ed.2d 107; McVicker v. Chesapeake & Ohio Railway Co., 307 F.2d 501 (C.A.6, 1962).

In the last case Chief Judge Miller dealt with an accident where a truck stalled on an Indiana railroad crossing in a snow storm. Holding that defendant's compliance with all statutory requirements did not remove speed as a negligence issue from the case,[3] he quoted a United States Supreme Court view:

> "As was said by the Supreme Court in the Grand Trunk Railway Co. case (144 U.S. at p. 417, 12 S.Ct. at p. 682), [Grand Trunk Railway Co. of Canada v. Ives, 144 U.S. 408, 12 S.Ct. 679, 36 L.Ed. 485 (1892)] 'There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances. The terms "ordinary care," "reasonable prudence," and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case, may, under different surroundings and circumstances, be gross negligence. * * * When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. It is only where the facts are such that all reasonable men must draw the same conclusion from them, that the question of negligence is ever considered as one of law for the court.' " McVicker v. Chesapeake & Ohio Railway Co., supra, 307 F.2d at 504.

The Ives case was concerned with a Michigan grade crossing accident where it was claimed that compliance with all statutorily stipulated duties rendered the railroad free from negligence as a matter of law. This view was rejected by the United States Supreme Court, relying on two old Michigan Supreme Court cases —Freeman v. Duluth S. S. & A. Railway Co., 74 Mich. 86, 41 N.W. 872, 3 L.R.A. 594 (1889) and Guggenheim v. Lake Shore & Michigan Southern Railway Co., 66 Mich. 150, 33 N.W. 161 (1887).

Very recently (subsequent to decision by the trial court!) this same rule and these same cases have been reviewed by the Michigan Supreme Court. The court held unanimously on the point in question:

> "Decision in this appeal has required our consideration of the circumstances in which a jury must be allowed to determine performance or breach of a railroad's common law duty of care at grade crossings. The trial judge initially submitted this issue to the jury which found from the evidence that due care required more from the defendant railroad than its mere maintenance of warning devices required by statute; but the judge subsequently concluded in granting defendant judgment *non obstante* that, *as a matter of law,* the circumstances disclosed by the evidence did not require of defendant any greater care than mere compliance with statutory requirements. For reasons to be subsequently stated, it is our conclusion that the trial judge was correct initially in submitting the question of defendant's compliance with its common law duty of care for factual determination by the jury and that the jury's finding that defendant had breached such duty was amply supported by the evidence." Emery v. Chesapeake & Ohio Railway Co.,

---

3. On another ground the case found plaintiff's recovery was barred by his contributory negligence.

372 Mich. 663, 127 N.W.2d 826 (1964).

We conclude that under Michigan law the trial judge committed no error in submitting the issue of train speed to the jury.

Generally, of course, in these stalled automobile cases the speed of the train is considered in relation to the observation and braking of the train crew. This was the second issue which the trial judge submitted to the jury in the instant case.

On this point the facts in our present case, taken on favorable view to plaintiffs, would establish that the train as it passed the crossing gate actuation switch 3,000 feet from the crossing was traveling at a speed of 900 to 1,000 feet every ten seconds; that the automobile in which these children were seated was stalled on the tracks for more than two-thirds of that time interval; and that the train traveled over half of the remaining distance of over 2,000 feet with the endangered vehicle in full view before emergency application of the brakes.

Defendant's brief deals with this aspect of the problem thus:

"Plaintiffs claim that Defendant's engineer should have seen the car and applied the brakes when the train was Two Thousand Three Hundred and Eighty feet (2,380′) west of the crossing. This was the theory of the facts which Plaintiffs must adhere to on this appeal. * * * It is undisputed that had the brakes of the train been applied at this point the train would have struck the automobile at a speed of forty (40) miles per hour. If the brakes on the train were applied One Thousand Two Hundred feet (1,200′) west of the crossing as stated by the railroad engineer, the automobile would have been struck while the train was traveling at a speed of fifty-five (55) miles per hour."

 Any braking, of course, increased the crucial time interval available to the frantic efforts of the driver to escape. We take judicial notice of the fact that a modern automobile can be started and moved its own length in very few seconds. We also note that any movement of the automobile and any decrease of speed or force of the train—even if insufficient to have prevented impact—could have changed substantially both the nature of the accident and the nature of the injuries suffered therefrom.

By so saying we are not presuming that additional time or lessened force would necessarily have prevented this accident or necessarily have prevented the deaths or injuries here complained of. But by so saying we do reject the invitation to join in holding as a matter of law that such favorable results of prompt braking were beyond the contemplation of reasonable men under all the facts in the plaintiffs' case.

The three Michigan cases which seem to us closest in point to the instant fact situation pertaining to train crew observation and braking are: Aetna Insurance Co. v. Detroit & Toledo Shore Line Railroad Co., 354 Mich. 580, 93 N.W. 2d 272 (1958); Sutter v. Pere Marquette Railway Co., 230 Mich. 489, 202 N.W. 967 (1925); and Orlowski v. Pere Marquette Railway Co., 222 Mich. 580, 193 N.W. 201 (1923).

None of these are "brown cow" cases. For one thing each was brought by a driver whose conduct (contrary to those cases we currently consider) was subject to attack as causally related to his own predicament. Speed and statutory regulations differed. But in each an automobile was stalled on railroad tracks in front of an onrushing train for an appreciable interval of seconds; in each plaintiff claimed negligence in lookout and braking; in each a verdict for plaintiff was sustained. And we have had cited to us and have been able to find no instance of a stalled automobile-railroad crossing case in Michigan where the negligence claims of a plaintiff were barred from jury consideration as a matter of law, except on grounds of his own contributory negligence.

**630**

As we have noted, the children's cases we deal with in appeal No. 15,451 are not subject to this last objection.

The judgment in appeal case No. 15,-450 is affirmed.

The judgments in appeal case No. 15,-451 are vacated and the case is remanded for entry of judgments in accordance with the jury verdicts.